JoNEs, Chief Judge,
delivered the opinion of the court:
This suit is brought under a special act designated as Private Law 1009, 82d Congress, 2d session, 66 Stat. A206. It authorizes the court to hear, determine and render judgment on the claim of plaintiff arising out of the failure of *279 the Wax' Department to certify him for retirement under the Emergency Officers’ Eetirement Act, as amended, 45 Stat. 735, or to retire him as a disabled officer of the Eegular Army. The act contains the following provision:
* * * In its considei’ation of such claim, the court shall determine whether or not the said Llewellyn B. Griffith should have been certified for retirement as an emergency officer or retired as a disabled officer of the Eegular Army. Should the court decide that the said Llewellyn B. Griffith should have been so certified ox-retired, judgment shall be rendered in an amount equal to the amount the said Llewellyn B. Griffith would have received had he been so certified or retired: Provided, That the passage and approval of this legislation shall not be construed as an inference of liability on the part of the Government of the United States.
Two issues are presented, íxamely: (1) whether plaintiff should have been certified for retirement as aix emergency officer during Wox-ld War I, or, (2) whether he should have been retired as a disabled officer of the Eegular Army.
Plaintiff was commissioned in the Eegular Army August 30,1917, and he thereafter at all times prior to November 10, 1922, continued to hold a coiximission in the Eegular Army, although during the period of World War I he held temporary rank higher than his regular rank. The Emei’gency Officers’ Eetirement Act, supra, applies only to persons who served during the time as an officer “other than as officers of the Eegular Army, Navy, or Marine Corps”. Plaintiff has now abandoned any claim based on the failui’e to be certified under the Emergency Officers’ Eetirement Act, so that the sole issue now presented is whether he should have been retired as a disabled officer of the Eegular Army.
Prior to his discharge from the Eegular Army plaintiff, on August 1, 1922, had specifically applied for retirement for physical disability. ' To ascertain whether he was entitled to be so retired plaintiff was ordered to the hospital at Fort Sam Houston, Texas, for observation and treatment and for a report as to his physical condition.
On July 17, 1922, the War Department issued Circular 152 setting out the procedure to be followed in effecting the reduction in the number of officers in the Eegular Army as *280 required by the act of June 30, 1922, 42 Stat. 716. This act provided for elimination of a specified number of officers by discharge or retirement before January 1, 1923. On July 1, 1922, plaintiff had applied for discharge with one year’s pay as provided in the act, but after the issuance of the circular he applied for permission to appear before a retiring board as provided by paragraph 14 of Circular 152. Action on the application for discharge was suspended to await the report of the medical officers at Fort Sam Houston as to plaintiff’s physical condition.
Plaintiff reported to the hospital as ordered and was thoroughly examined by at least six medical officers over the period from August 14 to August 19,1922. On August 19, 1922, a board of' three medical officers met with plaintiff present. On the basis of the medical reports, and after an examination of plaintiff, that board determined that he was physically fit for full field service. On the basis of such determination plaintiff was advised on September 11, 1922, that his request to appear before a retiring board was dis» approved as the physical examination report disclosed no physical defects warranting such action.
In the meantime, on August 23,1922, plaintiff had renewed his request for discharge from the Army. The Chief of . Engineers, who had approved the first request for discharge, likewise approved the renewed request.
On September 15, 1922, the Board of General Officers, pursuant to the act of June 30, 1922, supra, recommended that plaintiff be eliminated by retirement or discharge in accordance with his length of service.
On November 4,1922, the Adjutant General wrote a confidential letter to plaintiff enclosing a copy of orders for his honorable discharge from the service with one year’s pay pursuant to the act of June 30, 1922, effective November 10, 1922. Plaintiff was so discharged and was paid the one year’s pay.
The commissioner of this court who heard the evidence, and who was asked to make a recommendation, has found that the evidence fails to establish that plaintiff should have been retired as a disabled officer of the Kegular Army. Our review of the record satisfies us that this finding is the only *281 proper one that could be made on the evidence and we sustain the commissioner’s finding and approve the recommendation that plaintiff’s petition be dismissed.
It is so ordered.
Laramobe, Judge; Madden, Judge; Whitaker, Judge; and LittletoN, Judge, concur.
BINDINGS OE FACT
The court, having considered the evidence, the report of Commissioner George H. Foster, and the briefs and argument of counsel, makes findings of fact as follows:
This report is submitted pursuant to a motion for dismissal made by the defendant under the authority of subsection (c) of Buie 49.
1. This suit was brought pursuant to Private Law 1009, 82d Congress, 2d session, approved July 16, 1952. The act is printed as exhibit A to the petition.
2. Plaintiff was appointed to the U. S. Military Academy on June 15, 1914, and was graduated therefrom on August 30,1917. While a cadet at West Point, plaintiff was treated in the cadet hospital from August 5 to August 15, 1914; May 19, 1915 to June 9, 1915; and from October 28, 1915 to November 6, 1915, for malarial fever, tertian (occurring every third day) in line of duty.
He was also in the same hospital from January 5 to 7, 1916, and January 13 to 15, 1917, with “influenza epidemic, acute, in line of duty.” Effective August 30, 1917, plaintiff was appointed a second lieutenant of Engineers, in the Begu-lar Army. In succession he was given temporary and permanent promotions to first lieutenant and to captain, and he held a commission in the Begular Army at all times from August 30,1917, to November 10,1922.
3. When first commissioned, plaintiff was assigned to the 113th Engineer Begiment stationed at Camp Shelby, Mississippi. While stationed at Camp Shelby, plaintiff was admitted to the base hospital on January 18, 1918, for measles incurred in line of duty and was returned to duty February 5,1918. In April 1918 plaintiff was transferred to the 603d Engineer Begiment. At that time he was holding the rank *282 of captain and he was assigned as supply officer for the regiment. The 603d Engineer Eegiment arrived in France in September 1918, and was assigned to the First Army, as Army troops, under the general control of the Army Engineer Officer. The regiment was used for general engineering duties, but a considerable force of the regiment was later assigned to the duty of constructing and maintaining pontoon bridges. Until about October 25, 1918, the regiment was stationed behind the theater of operations and was most of the time billeted in small towns or in French Army barracks. On October 25, 1918, the regiment was ordered to Clermont-en-Argonne, where it arrived October 28. The regiment was encamped'at Auzeville about 3 miles east of Clermont. Auzeville is located about 7 or 8 miles south of the positions held by the American Army prior to the beginning of the Meuse-Argonne offensive on September 26, 1918. By October 28, the date on which plaintiff arrived at Ciermont, the American Army had advanced northward to points 10 to 11 miles from the starting point of the Meuse-Argonne offense. The headquarters of the regiment remained in the general area of Clermont until after the armistice of November 11,1918.
4. On November 4, 1918, the regiment was assigned to the Bridge Section, First Army, and on that date a detachment of 6 officers and 250 men, not including plaintiff, was sent forward to assist in the building and maintenance of pontoon bridges across the Meuse River. One such bridge had been constructed south of Dun-sur-Meuse about November 4 or 5,1918, the American troops having crossed the river on the night of November 3. On November 7,1918, plaintiff went forward to visit the detachment from his regiment which was near Dun-sur-Meuse. The bridge was then in use for the supply of the Army which at that time had advanced some 3 or 4 miles after crossing the Meuse. A second bridge was being constructed at the time. Plaintiff returned to his headquarters near Clermont that evening. On November 9, 1918, plaintiff again went forward to the vicinity of the frontline, and was in the area of artillery fire from the enemy. He again returned to his headquarters at night. *283 Plaintiff made no other trips to the vicinity of the firing lines before the armistice. During the period from October 29 to November 24, the 603d Regiment of Engineers, less detachment on bridge duty, was camped near Clermont. Plaintiff was quartered in a hut during this period. On November 24, plaintiff moved with the regiment to Verdun, where he was quartered in a house or barrack.
5. Plaintiff was later (sometime in February 1919) transferred to the 2d Regiment of Engineers and for a while was with the occupation troops in Germany. He returned to the United States sometime in August 1919 and was stationed at Camp Travis, Texas. During plaintiff’s tour of duty in Europe from September 1918 to August 1919 he was not wounded, gassed, nor hospitalized for any cause, nor is there any record of his having been treated by a medical officer.
6. While stationed at Camp Travis, Texas, in January 1920, plaintiff underwent a thorough physical examination and the official report of his condition at that time was that he was not disabled in any respect. His respiratory system was “normal, no rales,” his general appearance, “erect and healthy.” He did have a slight left varicocele. His post commander, Major General J. G. Harbord as required by orders, reported February 21, 1920, that plaintiff was in no way incapacitated for the performance of active field service.
7. Under date of May 6, 1920, plaintiff, who was apparently living off the post in San Antonio, Texas, was admitted to the base hospital at Fort Sam Houston, Texas, because of “difficult nasal respiration.” At that time he gave the medical officer a history of having had his nose broken twice: first at the age of 13 and the second time at the age of 15. He stated also that later he had cauterization for the obstruction. Examination disclosed a “Bilateral deviation of septum with hypertrophy of both middle turbinates.” An operation was performed and on May 10, 1920, he was discharged from the hospital as cured and fit for duty.
8. In the fall of 1920, plaintiff was placed on detached duty, attending, at Army expense, the Massachusetts Insti *284 tute of Technology in Boston, Massachusetts, and remained there about one year. During this entire year, plaintiff received no medical treatment by medical officers of the Army, although he apparently suffered an attack of asthma in December 1920. Upon leaving Boston in the fall of 1921, plaintiff reported to the Chief of Engineers in Washington, D. C. He required no medical aid in Washington. After temporary duty of about two weeks in Washington, he reported to the U. S. Engineer .Office, Cincinnati, Ohio, for duty. There is no official record of any illness or medical examination at this duty station.
9. Plaintiff had been married at Camp Travis, Texas, on November 28, 1919, to Use Plirschfeld, whose family lived near Fort Sam Houston. She accompanied him to Cincinnati. Less than three months after reporting at Cincinnati, plaintiff on January 6, 1922, requested and was granted a month’s leave of absence effective January 25. Plaintiff testified that the request was prompted by a desire to be in a more suitable climate. An additional 15 days’ leave was granted effective March 2, 1922.
10. The War Department Appropriation Act for the fiscal year ended June 80, 1923, enacted June 30, 1922, 42 Stat. 716, required a reduction in the number of officers on the active list of the Army. The reduction was to be accomplished by January 1, 1923, and a number of officers were to be eliminated by discharge or retirement, 42 Stat. 721 ff. The day following approval of this act, July 1, 1922, plaintiff requested his discharge with one year’s pay. He wrote the Chief of Engineers as follows:
1. I request that the Chief of Engineers recommend me for discharge with one year’s pay to the Board of five general officers who are empowered to choose officers who may be discharged from the service with one year’s' pay.
2. According to the Appropriation Act, the Board may recommend any officers they see fit who may be discharged with one year’s pay. This bonus may be given to the efficient and the inefficient alike, provided the Board recommends the officer for discharge.
3. I do not know what facts will be considered by the Board in making their recommendations but I feel that *285 I would like to have an opportunity to leave the service with one year’s pay.
4. I entered the military service (West Point) from Maryland in 1914, and graduated high enough to be commissioned as a Captain of Engineers in August 1917. I entered the service with certain reasonable ambitions. The customs and laws upon which I placed my hopes for advancement have been changed and I therefore wish to return to civil life.
5. I mention the following facts, not to find fault or show my full reasons for having to leave the service, but for whatever value they may be to my superiors who greatly determine the policies of the service. In spite of hard and satisfactory work both as an Engineer and as an Officer, I was demoted several thousands of files in 1919. This was a surprise, even to those who were benefited by the “lineal list” bill. _ On the other hand, thousands of officers, irrespective of merit or service rendered, were placed above me. This leaves little incentive or ambition for an officer to excel others. Even those who have for their aim a high reputation, find it uncertain to remain in the service under the Class B provisions. I am, for these and other reasons, returning to civil life, having served the Army as best I could.
6. The present law for demotion of permanently commissioned officers leaves us no way for resigning with sufficient funds to support our families while we get work. I am therefore requesting that I be discharged with one year’s pay by recommendation of the Board as authorized by Congress.
This application was forwarded by the District and Division Engineers, each recommending approval, and the Chief of Engineers advised the Adjutant General under date of July 21,1922, in part as follows:
2. An examination of Captain Griffith’s record shows that he is an officer of average ability in practically all respects; his earlier reports indicated a lack of tact but this failing appears to have been overcome with more experience.' Captain Griffith is not, however, particularly qualified in any line of work.
3. Because of the character of Captain Griffith’s record, the Chief of Engineers would not normally recommend his elimination from the service, but in view of the material reduction in the number of officers, which must be made, and in view of the expressed desire of *286 this officer for discharge from the service,_ the Chief of Engineers believes that it would be advisable to discharge this officer with one year’s pay and so recommends.
After plaintiff filed his application for discharge, the Acting Chief of Engineers granted him an additional month’s leave of absence, effective July 10,1922.
11. Under date of July 17, 1922, the War Department issued Circular No. 152 which provided the procedure to be followed in effecting the reduction required by the act of June 30, 1922, and which also called attention to the possibility of retirement for physical disability. The circular is reproduced as Exhibit o to the petition and is incorporated herein by reference. The date stated therein as December 15,1923, should read December 15,1922.
12. Under date of July 28, 1922, plaintiff wrote to the Chief of Engineers through channels from San Antonio and requested that he be transferred to Fort Sam Houston for duty so that he could be under observation and treatment for asthma at which place he had an operation in 1919 for relief of “this malady.” He stated that asthma “has at times given me considerable trouble since my return from France in 1919” and that on July 12, he had been operated on by an unnamed specialist in Cincinnati and had had a physical examination and X-ray taken at San Antonio. Under date of July 31,1922, the U. S. Engineer at Cincinnati forwarded plaintiff’s request stating that he was absent by reason of a leave of absence granted by the Chief of Engineers and that plaintiff’s services were not needed in the district. The Chief of Engineers' disapproved plaintiff’s request for transfer in view of recent War Department instructions relating to permanent changes of station. Plaintiff was advised by letter of August 5,1922, that if he were exceedingly anxious to remain in San Antonio, he might apply for an extension of his leave and ask the medical officers at Fort Sam Houston to hospitalize him for observation and treatment.
13. Under date of August 1,1922, plaintiff made application in writing to the Adjutant General of the Army to appear before a retiring board as provided by paragraph 14 of Circular 152. His application was based on an alleged *287 “physical disability due to severe attacks of asthma which I have had from time to time since my return from France in 1919,” and which he attributed to his service “along the front” during the war. The application was subsequently accompanied by affidavits of plaintiff’s wife, his father-in-law, who was a doctor, and another physician, Dr. Smith, who had been called in for consultation by his father-in-law in December 1919. In substance the affidavits stated that in December 1919 and again in May 1922 at San Antonio, Texas, plaintiff had extreme attacks of asthma, both of which were witnessed by his wife, his father-in-law, and Dr. Smith; also, that plaintiff had had several “slight attacks” in Boston and Cincinnati. There is no record of plaintiff’s having consulted with, or been treated by Army doctors during the period August 1919 to May 6,1920, when the nose operation was performed, nor from May 10,1920, to August 14,1922.
14. The Adjutant General referred plaintiff’s application for retirement to the Surgeon General of the Army. On August 14,1922, the Adjutant General, upon recommendation of the Surgeon General, telegraphed plaintiff and ordered him to report at the hospital in Fort Sam Houston for observation and treatment and at the same time instructed the commanding officer of the hospital to report on plaintiff’s physical condition. Plaintiff entered the hospital the same day and was under observation for eight days.
15. While under observation in the hospital, plaintiff was given examinations by at least six medical officers in order to make reports on plaintiff’s condition for the use of a board of officers.
16. On August 19, 1922, a board of three medical officers convened at the hospital at the direction of the commanding officer and considered plaintiff’s physical condition. After this conference, at which plaintiff was present, the board made the following findings:
1. Captain Griffith has been a patient in this hospital .since August 14,1922.
2. The Board after careful consideration of the history, hospital records and Certificates of civilian Physicians of San Antonio and physical examination of this *288 Officer, is unable to find any indication or symptoms of asthma since he entered the Hospital.
CONCLUSIONS:
1.That he is fit for full field service.
On August 21,1922, the president of the board forwarded to the commanding officer of the hospital the report of the board proceedings of August 19, who approved the findings and conclusions of the board the same day. Plaintiff was released from the hospital on August 21,1922. On August 22 the' commanding officer of the hospital transmitted the report of the board to the commanding officer Eighth Corps Area, stating his concurrence with the findings of the board. The report was forwarded to the Adjutant General of the Army recommending that plaintiff be continued on a duty status. The Adjutant General of the Army upon receiving the report, referred it to the Surgeon General, who on September 7,1922, returned it to the Adjutant General with approval of the recommendation of the commanding officer of the station hospital at Fort Sam Houston, Texas.
17. Upon receipt of the advice of the action of the board of medical officers, plaintiff on August 23,1922, reviewed his request for discharge from the Army stating as follows:
1. In accordance with the provisions of par. 8, War Department circular #152, dated July 17,1922,1 desire to submit to the board the following statement relative to my present and probable future effectiveness. _
_ 2. For a life career I do not like military service and therefore think that it is for the best interests of the Army that I be discharged.
3. There are also many minor facts affecting me directly and indirectly which render my service to the Army less effictive [sic]. For example I have asthma, which develops under certain climatic conditions and greatly handicaps me physically. Furthermore my wife has not been well due to certain climatic conditions. Her health affects my efficiency indirectly. There are many other facts which taken together make me unsuited for military career.
4. In view of the above I request that I be discharged with one year’s pay so that I may start in civil life at this time.
*289 This request was forwarded to the Chief of Engineers who on September 1,1922, forwarded it to the Adjutant General with an endorsement as follows:
1. There is forwarded herewith an additional statement from Captain L. B. Griffith, Corps of Engineers, U. S. A., concerning his request that he be discharged from the service with one year’s pay, under the provisions of Act of Congress approved June 30, 1922.
2. His original request was approved by the Chief of Engineers as is the foregoing statement.
18. Under date of September 11, 1922, the Adjutant General through the Commanding General of fhe Eighth Corps Area advised plaintiff that his request of August 1, 1922, to appear before an Army Betiring Board was disapproved as “A thorough physical examination discloses no physical defects warranting such action.” Under date of September 15, 1922, plaintiff telegraphed the Adjutant General and by endorsement of the same day requested reconsideration “as I have recently developed an attack which was officially-observed by the medical officers at Fort Sam Houston Hospital. The medical officers there had no direct evidence until they had the records of this recent attack. The physical examination referred to was made while I was in the hospital and at a time when I didn’t have an attack.”
Plaintiff’s request for reconsideration was referred through channels to the commanding officer of the hospital who on September 19, 1922, advised the commanding officer of the Eighth Corps Area as follows:
1. The above named was a patient in this hospital from August 14th to 21st, 1922, under observation for bronchial asthma but during this period no evidence of asthma could be demonstrated. Since that time he has been examined in a mild attack of what was apparently asthma but which was transient in character and does not disable him to such a degree as to warrant recommendation that he be brought before a retiring board at this time.
On September 21, 1922, Corps Area Commander advised plaintiff of this report and of his concurrence therein.
Plaintiff was admitted to the station hospital', Fort Sam Houston, Texas, on September 17, 1922, at 9:30 a. m. and *290 was released September 19,1922, to duty. The clinical record on this admission is as follows:
Suffered an attack of Asthma at 2 a. m., September IB, 1922. Was examined by Captain Newton, attending surgeon and by Major Dewey, OD at hospital. Was readmitted to make attack a matter of record.
The clinical record also contains a notation stating that there was no complaint of illness made by plaintiff at time of admission.
Under date of September 26,1922, the Chief of Engineers wired plaintiff that his accrued leave had been exceeded by 15 days and that any additional leave would be on a half-pay basis and would have to be granted by the Adjutant General. The Adjutant General granted a month’s leave September 27, 1922.
19. On September 15,1922, the Board of General Officers, established pursuant to the act of June 80, 1922, recommended that plaintiff be eliminated from the service by retirement or discharge in accordance with his length of service. The recommended action was stated by the board to have been based primarily on the following:
Usefulness and relative value to service.
Officer’s expressed desire for elimination.
Pending consideration of plaintiff’s application for retirement for disability, action on the recommendation was suspended. On October 4, 1922, plaintiff renewed his request for discharge, stating that “after thorough physical examination my application has been disapproved because of insufficient evidence of physical disability.” Under date of October 5, 1922, the recommendation for his elimination was approved by the Acting Secretary of War.
On October 24,1922, the Adjutant General by order of the Secretary of War wrote plaintiff as follows :
1. With reference to your request for retirement, in view of the report from Station Plospital, Fort Sam Houston, Texas, it is not believed that your disability is sufficiently serious to warrant your appearance before an Army Retiring Board, and therefore, no further action will be taken in this matter.
This determination was promptly forwarded to plaintiff through the office of the Chief of Engineers. On November *291 4,1922, the Adjutant General’s office wrote a confidential letter to plaintiff enclosing a copy of confidential orders issued that date, announcing Ms honorable discharge from the service with one year’s pay pursuant to the act of Congress of June 30, 1922, effective November 10, 1922, and requesting plaintiff to report to the commanding officer, Fort Sam Houston, Texas, on November 10,1922, for the accomplishment of Ms discharge and final settlement of Ms account.
Certain forms, including a report of physical examination were enclosed with the information that if plaintiff were willing to certify that he was not suffering from any disease, his discharge could be accomplished without further physical examination. Plaintiff declined to so certify and a physical examination was given on November 10,1922.
On the “Report of Physical Examination of Officers Prior to Separation From Service in The TJMted States Army,” plaintiff executed a certificate stating: “I have a disease which was incurred during 1917 in France, while in the military service. The nature * * * of the disease, so far as known are: acute attacks of asthma.” On the report Major W. T. Weissinger, M. C., TJ. S. Army, as examining surgeon, issued a certificate stating that Captain Griffith “has been given a careful physical examination” and is “physically and mentally sound” except that he had “asthma, Bronchial, probably chronic, was seen in one mild attack in September 1922,” that the disease “is not likely to result in death or disability” and “In view of occupation, he is ten percent disabled.”
In January or February 1923, plaintiff commenced full-time employment with the city of Corpus Christi, Texas, about 150 miles from San Antonio as city engineer, which position he held for three years.
20. On October 11,1923, plaintiff applied to the U. S. Veterans’ Bureau for compensation as a disabled veteran. He stated in the application that Ms disability, chronic asthma, began in the spring of 1919 and that in his opinion it was caused by “exposure at front lines in France.” He further stated that he had received medical attention on March 7 and 8, 1923, by the medical officer of the day at the station hospital, Fort Sam Houston, and that he was in bed or in *292 the hospital March 6-10, 1923, during which time he was treated by an officer from the station hospital at San Antonio, and that he was in bed part of the time between April 26-30 in Corpus Christi, Texas. The record does not disclose just when compensation payments were started to plaintiff, but in January 1930, plaintiff was advised that the rating board had changed the rating on his “disability of chronic bronchitis, asthma, from temporary partial, 25 percent to permanent partial, 40 percent effective May 9, 1929.” Senate Report No. 1967 on S. 2046 contained a report from the War Department relating to the bill reading in part as follows:
* * * The Veterans’ Administration has advised the Department of the Army that Captain Griffith was first rated by the Veterans’ Bureau on November 10,1923, as having a service-connected temporary partial disability of 10 percent on account of bronchial asthma; that he was not rated as having a service-connected disability of 30 percent or more until December 27,1929; and that he is now rated as having a 30 percent service-connected disability, but is receiving compensation of $60 per month under a “protected rating permanent partial 40 percent.”
21. On May 2,1929, plaintiff applied to the Director of the Veterans’ Bureau for benefits under the provisions of the Emergency Officers’ Retirement Act of May 24, 1928. In this application, he claimed that he “developed asthma in France shortly after the Meuse-Argonne Battle in the fall of 1918,” and that his disability rating has been increased and that it “last year reached 25 percent disability.” He stated his belief that his then status would cause the Bureau to place Ms disability as 30 percent.
This application for the benefits of the Emergency Officers’ Retirement Act was denied on the ground that plaintiff, by reason of his holding of a Regular Army Commission during the entire service, was not eligible for retirement pay under that law. That claim was also referred to this court by the Jurisdictional Act in this case, but plaintiff has now abandoned that contention.
22. In 1951, plaintiff applied to the Department of the Army Board for Correction of Records to correct the record *293 in bis case to sbow that he was an emergency officer within the terms of the Emergency Officers’ Retirement Act. The application was denied.
23. The evidence presented by plaintiff fails to establish that plaintiff should have been certified “for retirement as an emergency officer pursuant to the provisions of the Emergency Officers’ Retirement Act, as amended (45 Stat. 735), or retired as a disabled officer of the Regular Army.”
It is recommended that the motion of defendant be allowed and the petition be dismissed.
In 1922 when plaintiff was examined upon his request for retirement for disability there was no minimum percentage of disability necessary for retirement as there is now. Army regulations (A. R. 605-250 of Sept. 7, 1912) defines the character of incapacity as follows:
Incapacity for service by reason of physical disability relates to a permanent incurable disease, injury, or infirmity which makes the reasonable fulfillment of the purpose of the officer’s employment impossible.
On July 10, 1908, the Attorney General (27 O. A. G. 14) rendered an opinion to the Secretary of War in which it was stated that the disability which warranted retirement was not incapacity of the officer to perform his duties well but incapacity to perform them at all, or, in other words, he must be unable to so perform them as to reasonably fulfill the purpose of his employment.
A board of three medical officers, before whom plaintiff appeared in person, after examination of the hospital records to which plaintiff had been assigned for observation, determined that plaintiff was fit for full field service. Accordingly, he was honorably discharged with one year’s pay as he had requested, pursuant to selection by the board appointed for that purpose by the act of June 30,1922.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.