Per Curiam:
This is a suit by the plaintiff, a colonel, Army of the United States, who was retired for physical disability with retirement pay at the rate of 75% of his basic pay, effective April 14, 1946. Following enactment of the Career Compensation Act of 1949 (68 Stat. 802), a determination was made under Section 411 of the Act, and in accordance with the standard schedule of rating disabilities in current use by the Veterans Administration, that *290 plaintiff was 60% disabled at the time he was retired or granted retirement pay. Plaintiff thereupon elected to receive disability retirement pay under the Career Compensation Act computed on the percentage of his disability. Plaintiff now claims that he was 80% disabled, rather than 60% disabled, and seeks to recover increased retired pay for the period commencing October 1, 1949. The issue for determination by the court is whether the action of the Department of the Army, including determinations by the Army Board for Correction of Military Becords, in denying a rating in excess of 60% for plaintiff’s disabilities was arbitrary, capricious, and unsupported by substantial evidence.
The trial commissioner of this court made findings of fact to which exceptions were made by the plaintiff. Briefs were filed by both parties and the case was submitted on oral argument by counsel. The court approves the findings of the trial commissioner and holds that the action of the Department of the Army, including determinations by the Army Board for Correction of Military Becords, in denying a rating in excess of 60% for plaintiff’s disabilities, was not arbitrary or capricious and is supported by substantial evidence. Plaintiff is therefore not entitled to recover and his petition will be dismissed.
It is so ordered.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States, residing at Shelburne Falls, Massachusetts.
2. Plaintiff performed active Federal service as an enlisted member of the Bhode Island National Guard from June 24, 1916, to November 2,1916, and from August 5,1917, to July 31, 1918. On August 1,1918, he was commissioned, and he entered upon active Federal service as a second lieutenant in the Army on that date. He served thereafter continuously to May 13, 1919, when he was honorably discharged *291 from the Army. On September 18, 1940, he was granted a commission as a captain, Chemical Warfare Service, Officers’ Reserve Corps. He entered npon extended active duty in the grade of captain on January 25,1941, and thereafter served on active duty continuously to April 18,1946, receiving promotions to major on February 1, 1942, to lieutenant colonel on October 1, 1942, and to colonel on December 29, 1945. On April 13, 1946, plaintiff was released to inactive duty by reason of physical disability incurred in line of duty and incident to service and certified to the Veterans Administration in the grade of colonel for disability retirement pay benefits under the Act of April 3, 1939, 53 Stat. 557, as amended.
3. Army clinical records indicate that on May 10, 1943, plaintiff complained of an attack of “lightheadedness,” or “blind staggers.” The clinical record entry further mentioned a coated tongue, with a recommendation for a laxative; and that an early change in plaintiff’s eyeglasses was indicated.
4. On August 18, 1945, plaintiff reported to and was examined at the Army General Dispensary, Boston, Massachusetts. He was ordered into Waltham Army Regional Hospital, Waltham, Massachusetts, for observation and treatment. Shortly after his admission to Waltham Regional Hospital, a gall bladder series and two gastrointestinal series were performed. On September 6, 1945, a subtotal gastrectomy was done, and two chronic gastric ulcers were found. His convalescence was uneventful, and he went on sick leave. He returned to the hospital in October of the same year. On October 30,1945, a cholecystectomy (removal of the gall bladder) was done, and plaintiff’s convalescence from this operation was uneventful.
5. On November 20,1945, plaintiff appeared before a Disposition Board. The Board convened at Waltham Regional Hospital. The Board found plaintiff permanently incapacitated for active service by reason of:
defoRMity of the stomach, following gastrectomy for gastric ulcers performed at Waltham Regional Hospital on 6 September 1945. LD: Yes.
*292 The Board recommended that plaintiff be ordered to appear before an Army Retiring Board.
6. On December 13, 1945, plaintiff was notified to appear for a hearing before an Army Retiring Board. An audio-gram was taken at the Ear Clinic, Waltham Regional Hospital, on December 14, 1945. The audiogram indicated no loss of hearing in the conversational range but a moderate loss in the higher frequencies. A loss of high tone acuity could be a normal finding in a man of plaintiff’s age.
7. On December 20,1945, an Army Retiring Board found that plaintiff was permanently incapacitated for active service ; that the cause of said incapacity was deformity of the stomach following gastrectomy for gastric ulcers performed at Waltham Regional Hospital on September 6, 1945. The Board further found that the said incapacity originated January 1945; plaintiff became incapacitated for active service on August 21, 1945; the incapacity was the result of an incident of service and was permanent; plaintiff was physically unfit for limited service; and plaintiff’s disability was not incurred in combat with an enemy of the United States or as a result of an explosion of an instrumentality of war.
8. The proceedings of the Army Retiring Board disclose, in part, the following:
Q. [By the Recorder] State the nature, duration and cause of any disability that you believe you have.
A. [By Plaintiff] As I understand it, I entered the Hospital on August 21, X-ray examination showed two stomach ulcers. In order to remove the stomach ulcers an operation was performed on 6 September and approximately half of the stomach has been removed and a portion of the intestines and a new connection has been made with the stomach. I returned on October 30 and the second operation was performed to remove the gall bladder which had six large gall stones in it. I now find myself with about half my stomach and no gall bladder. In order to eliminate, if possible, a recurrence of the ulcer, I am now on a bland diet modified by a gall bladder diet in order to remove some of the fats that appear on the ulcer diet and I find that it is necessary that I eat about every three hours in order to keep something in my stomach which apparently is dumping too rapidly. I think that is the case, Colonel.
*293 9. The proceedings and findings of the Army Retiring Board having been approved by the Secretary of War, plaintiff was relieved from active duty by reason of physical disability on April 18, 1946, and certified to the Veterans Administration in the grade of colonel for disability retirement pay effective April 14, 1946. For the period from April 14, 1946, to September 30,1949, plaintiff received pay at the rate of 75 percent of the active-duty pay of a colonel with over 8 years’ service.
10. Following enactment of the Career Compensation Act of 1949, 63 Stat. 802, the Adjutant General of the Army advised plaintiff by letter dated April 25,1950, that a review of his case pursuant to the provisions of the said Act had been made and it was determined that plaintiff was 60 percent disabled at the time he was retired or granted retirement pay. Plaintiff was further advised that he could elect to receive disability retirement pay computed on the percentage of his disability ($342), or computed on the basis of his years of active service ($114), or he could continue to receive his present rate of disability retirement pay under the old pay schedule ($302.50). By letter dated May 16, 1950, plaintiff elected to receive disability retirement pay based on the percentage of his disability, and since October 1, 1949, plaintiff has been paid disability retirement pay in an amount so computed.
11. By letter dated May 11, 1951, plaintiff requested the Adjutant General to furnish him information concerning the procedure to be followed to obtain, an increased percentage of disability, and stated, in part, as follows:
3. It has recently come to my knowledge that in my case the sub-total gastrectomy (gastric resection) of itself alone rates a 60% disability. It would therefore seem to follow that the severe and painful case of gall stones which necessitated the removal of my gall bladder in a second operation dui’ing the same continuous period of hospitalization has not been considered in addition to the removal of my stomach. The gall bladder condition of itself is understood to represent a 30% disability. This should substantially increase the 60% disability determination.
*294 12. The Adjutant General, by letter dated May 18, 1951, advised plaintiff, in part, as follows:
4. The percentage of disability in your case was determined by the Army Physical Review Council after a review of the proceedings of the Army retiring board and other medical records pertinent to your physical condition at the time of your retirement. This percentage may not be based upon your current degree of physical unfitness. However, if you are dissatisfied with the percentage of disability determined by the Army Physical Review Council, you may submit to this office a request, in writing, with medical evidence or other documentary information pertinent to your physical condition at the time of retirement, sufficient to justify reconsideration on the grounds that you believe such evidence or information was not considered or available at the time your records were reviewed by the Council.
13. By letter dated June 11, 1951, addressed to the Adjutant General, plaintiff requested a review and reconsideration of the percentage of disability as determined by the Army Physical Review Council. He contended therein, in pertinent part, as follows:
5. On the basis of these references it is contended that sufficient weight was not attached to the gall bladder condition with relation to the gastrectomy in determining the percentage of disability. It is known that the gall bladder condition of itself alone represents a 30% disability in the Veterans Administration Schedule. It is contended that in the combination of the two defects, sufficient evidence of the existence of which is present, there is a reciprocal aggravation which tends to increase the percentage of disability of each separate defect. It becomes more than a simple matter of arithmetic. Further, it should be readily understandable that at the time of the Retirement Board proceedings there was no advance knowledge that P.L. 351 would require that retirement pay would be based upon a percentage of disability as set up in the Veterans Administration schedule and therefore, the cause of incapacity in answer to Question 24 on Wi) AGO Form 199 referred only to deformity of the stomach which alone was sufficient for retirement and payment of 75% of active duty basic pay. No mention was made of the relation of the absence of the gall bladder because of itself alone it was not an incapacitating defect and it was therefore passed over in *295 answer to that question as being superfluous for the purpose of proving disability for retirement purposes.
14. By letter dated August 7,1951, the Adjutant General advised plaintiff that his records had been resubmitted to the Army Physical Review Council for reconsideration; that the Council considered there was insufficient justification for an amended rating and, accordingly, adhered to its original determination. He was also informed that the Department of the Army reaffirmed its approval of the original percentage of disability.
15. By letter dated August 20,1951, plaintiff requested the Adjutant General to advise him as go the error, if any, “that would result in a determination of 60% rather than 72% disability.”
The Adjutant General, in a letter dated September 4,1951, advised plaintiff, in pertinent part, as follows:
2. You are advised that the service-connected disability was rated under the provisions of Section 411, Career Compensation Act of 1949, and evaluated on a permanent basis, as of the time of retirement or as of the time granted retirement pay, in accordance with the provisions of the Veterans Administration for Rating Disabilities as follows:

Diagnosis Rating

1. Deformity of the stomach, following gastrectomy for gastric ulcers performed at Waltham Regional Hospital, 6 September 1945. 60% VACode 7805 (7308)
2. Gall bladder, removal of_ 10% VACode 7318
Combined rating_ 60%
16.By application dated January 28, 1955, plaintiff made a request to the Army Board for Correction of Military Records that the evaluation of his disability be corrected to provide as follows:

Diagnosis Rating

1. Deformity of the stomach, 60% VA Code 7305 following gastrectomy for (7308) gastric ulcers performed at Waltham Regional Hospital 6 September 1945.

*296
Diagnosis Rating

2. Gall Bladder, removal of, 30% with, severe symptoms. VA Code 7318[1]
3. Meniere’s Syndrome, mild 30% aural vertigo and deafness. VA Code 6205
Combined rating-80%
It was plaintiff’s contention that, “because the gall bladder condition was not essential in proving disability in association with the stomach deformity, it was not given sufficient weight in the records nor in the proceedings of the Retiring Board,” and that “No mention is made in the hospital records nor in the Retiring Board proceedings of the presence of Meniere’s Disease which had originated some two years earlier.” Plaintiff further stated that, under certain life insurance contracts, he had been “granted total and permanent disability benefits for disability commencing 19 August 1945 r” and that he had been “unable to secure or to follow a substantially gainful occupation and probably never will be able to do so.”
17. On May 10, 1955, the Adjutant General advised the plaintiff that a thorough review of his records failed to disclose evidence of error or injustice regarding his separation from active service by reason of physical disability with a rating of 60 percent on April 13,1946, and that, therefore, the Board had concluded that there was no justification for a formal hearing or review of his case.
18. On June 20, 1955, plaintiff protested the denial of his application and requested an explanation of the action taken by the Board. In reply, the Army Board for Correction of Military Records, under date of July 20, 1955, advised plaintiff as follows:
Reference is made to your letter dated 20 June 1955 regarding your application to this Board for correction of your military records to show retirement by reason *297 of physical disability with higher percentage rating than the combined 60 per cent awarded under the provisions of Public Law 351,81st Congress.
Your application, together with the evidence submitted, was carefully considered in conjunction with your complete military and medical records bearing on your condition at date of your relief from active duty by reason of physical disability, on 13 April 1946.
The medical statements which you submitted from Dr. H. E. Oxman were previously considered by the Army Physical Eeview Council, and the medical statement from Dr. H. C. Ferguson indicates that he was not consulted by you until approximately 31 January 1947.
The provisions of Public Law 351, 81st Congress, require that percentage of disability be computed on the basis of the disability existing at date of retirement. In a retrospective review of this nature it is essential that the evidence of record be strictly applied. Your symptoms relating to gall bladder were considered mild at date of separation. There also appears no basis for a rating for any hearing defect since your retirement examination indicated hearing 15/15 in both ears, and therefore your hearing was not considered disabling to any degree.
Total and permanent disability adjudication for insurance purposes is based on an entirely different concept, and the Veterans Administration Eating Schedule is not used in making determinations for waiver of premiums or payment of insurance disability benefits. In this connection, it is noteworthy that one who is rated only 10 per cent for service connected disability may be considered totally incapacitated for insurance purposes as the result of a prolonged period of hospitalization. As to private insurance company evaluation, it appears that their adjudication is subject to revision at any point where it is apparent that the insured’s condition warrants. The evaluation by the Department of the Army under the provisions of Section 411, Public Law 351, required that the member’s condition must be evaluated as of the date of retirement, on a permanent basis, with no further reevaluation.
In view of the entire record, there appears to be no evidence of error or injustice which would warrant a formal review by this Board.
19. By letter of April 16, 1956, plaintiff again submitted an application to the Army Board for Correction of Military Eecords wherein he requested an “Increase in percentage of *298 disability from 60% to a higher figure due to additional disabilities not considered at time of original valuation.”
20. On November 2, 1956, the Army Board for Correction of Military Records forwarded plaintiff’s application and other pertinent records to the Surgeon General, requesting comment and opinion as to whether plaintiff’s condition at date of retirement warranted a higher disability rating, and, if so, a statement of the applicable percentage evaluation of each condition. Under date of November 15, 1956, the Surgeon General advised the Army Board for Correction of Military Records as follows:
1. The attached records in the case of Carroll E. Adams, 0-398218, have been carefully reviewed.
2. The records reveal that this officer had been in food health up to about five or six months prior to .ugust 1945. He began having symptoms referable to the gastrointestinal tract and was admitted to the hospital, 21 August 1945. His symptoms were such that they could be ascribed to either gall bladder disease or peptic ulcers. The gall bladder was investigated first and a poorly functioning gall bladder with gall stones was demonstrated. Removal of the gall bladder was recommended. However, the question of ulcers was considered and they were found to be present. Because of the danger of malignancy the ulcers received first attention and a partial gastrectomy was done. No malignancy was found. He recovered from the operation and on return from convalescent leave the gall bladder was removed. The record is not clear whether there was some particular indication for removal of the gall bladder at that particular time or not. The only bit of evidence to support such an assumption is in the pathological report which states that in the removed specimen a stone was found firmly impacted into the ampulla. Recovery from the gall bladder removal was without particular incident. There was not sufficient time intervening between the operations and his separation from the service to determine satisfactorily what permanent residuals were likely. He was still on a rather restricted ulcer diet and appeared to be progressing in a satisfactory manner.
3.Records subsequent to his separation indicate that he still requires frequent small feedings and that he has developed marginal ulcers. It is not possible to differentiate what symptoms he has now are referable to the recurrent ulcers and what symptoms might be *299 ascribed to the loss of the gall bladder. Most cases have very little residuals from loss of the gall bladder after twelve or eighteen months, and it seems reasonable to believe that in this case the residual gastrointestinal symptoms are due to the partial gastrectomy and marginal ulcers rather than to the loss of the gall bladder.
4. In regard to the Meniere’s syndrome, there is very little data in the service record and it appears to have been a negligible problem. There is a photostat copy of 5/10/43, which records that he had attacks of light headiness [sic] and there is a photostat of an audio-gram dated 14 December 1945, which shows normal hearing within the speech range but a rather marked loss in both ears in the higher frequencies. This finding is very common among those who have been subjected to loud or continuous noise. During the hospitalization he was seen in the eye, ear, nose, and throat department for adjustment of his glasses and removal of cerumen from one ear. No cerumen was found. On the basis of service records, it does not appear that a diagnosis of Meniere’s syndrome was warranted.
5. In summary, the opinion is expressed, based upon the evidence of record, that the findings of the Army retiring board are substantiated by the record and that the percentages adjudged are in conformity with the Veterans Administration Schedule and commensurate with the degree of disability according to the schedule, as it existed at the time of his separation from the service.
21. On November 30, 1956, the Army Board for Correction of Military Becords advised plaintiff’s counsel, in part, as follows:
The application and evidence submitted, including the statement by Dr. Burwell Dodd, was considered in connection with Veterans Administration records and further medical opinion.
The Board determined that insufficient evidence existed to indicate probable material error or injustice in the combined disability rating of 60 per cent which was awarded at date of retirement. Therefore, the Board found no basis for granting a formal hearing and the application for reconsideration was denied on 28 November 1956.
*300 22. On November 13, 1957, plaintiff again filed an application with, the Army Board for Correction of Military Records wherein he requested that “[t]he percentage of service-connected disability awarded me under the provisions of Section 411, Career Compensation Act of 1949, should be raised from 60% to 80% effective October 1, 1949.”
23. On March 5, 1958, the Army Board for Correction of Military Records advised plaintiff’s counsel as follows:
Reference is made to your letter dated 6 February 1958 with which you included a statement from Colonel Carroll E. Adams in support of his application for correction of Military records to show his combined percentage of disability as 80 in lieu of 60 per cent at date of retirement.
Further reference is also made to Colonel Adams’ application for reconsideration dated 13 November 1957, the memorandum in support of the application prepared by your office, and the attached medical evidence and audiogram.
Colonel Adams was found permanently incapacitated for active military service due to deformity of the stomach following gastrectomy for gastric ulcer performed at Waltham General Hospital on 6 September 1945. This was based on the findings of an Army Retiring Board on 20 December 1945 and Colonel Adams personally appeared before the Board. The Board did not find Colonel Adams suffering from any other incapacitating disabilities, and he did not testify as to any other disabilities at the date of the hearing. The Board’s findings were medically reviewed, and approved by the Department.
Although the Veterans Administration awarded Colonel Adams a 30 per cent rating for Meniere’s Syndrome with perceptive deafness, effective 21 September 1955, such condition was not considered existing or disabling to an extent warranting a compensable rating at the date of his retirement.
It is regretted that it is therefore necessary to deny a formal hearing.
24. During the trial of this case, plaintiff testified that in 1949 he was examined at the Lahey Clinic, Boston, Massachusetts, at the expense of the Connecticut General Life Insurance Company, for the purpose of receiving disability benefits under certain life insurance contracts that plaintiff *301 bad with tbe Connecticut General Life Insurance Company and tbe Connecticut Mutual Life Insurance Company. Plaintiff included with bis application to the Correction Board dated January 28, 1955, letters from both the aforementioned insurance companies confirming that he was receiving total disability benefits under his life insurance contracts. The Lahey Clinic, in a letter dated May 5, 1949, had advised the Connecticut General Insurance Company, in part, as follows:
Colonel Carroll E. Adams of Shelburne Falls, Massachusetts, came to this Clinic for examination on April 26, 1949. His chief complaint was fatigue and exhaustion of three and a half years’ duration. He apparently dates it from his operation in the Army which was a sub-total gastric resection for peptic ulcer followed by a cholecystectomy for gall stones.
His general physical examination was negative. He was in good nutrition and had good color. The blood pressure was 114/60, the pulse was 80, and his weight was 195 pounds, dressed. Laboratory studies showed a normal hemoglobin of 14.6 grams or 96%, white count 8,000, Hinton test negative, the sedimentation rate normal, the blood cholesterol was normal at 217, and the blood sugar was normal at 80 mgm. one and a half hours after a meal. Gastric analysis showed a free acid of 5, total acid 20 after an Ewald meal.
Gastro-intestinal X-rays showed a normal esophagus, normal gastric stump and stoma. The gastro-enterostomy was functioning normally. The X-ray of the chest showed the lungs to be clear. The heart was normal in outline. The electrocardiogram was normal.
From a gastro-intestinal point of view there is no organic disease or any disorder of the gastro-intestinal tract which would cause the symptoms of which he complained.
Dr. Hurxthal of the general medical department found no evidence of any cardio-vascular disease. We both believe that Colonel Adams’s weakness and disability are entirely upon the basis of nervous exhaustion or psychasthenia but that this may well be adequate cause for disability.
Colonel Adams was seen once by Dr. Dynes, of our Neuro-Psychiatric Department, and I am asking Dr. Dynes to write a separate opinion because I think this whole question hinges upon whether or not the psy-chasthenia is adequate cause for complete disability. *302 It is obvious that he is able to be up and about but it is also very questionable whether or not he could carry on any gainful occupation. Possibly Dr. Dynes should see him again before a final opinion is given.
25. In his applications to the Army Board for Correction of Military Records, dated January 28, 1955, and March 17, 1956, plaintiff advised the Board that he did not desire to appear before the Board or to have witnesses appear and testify in support of his applications. In his application to the Correction Board dated November 13,1957, he stated that he desired to appear before the Board and to have Dr. Burwell Dodd appear in person as a witness. This request was denied.
Although plaintiff was not granted a formal hearing, it appears reasonable to conclude that testimony of Dr. Burwell Dodd before such Board would have confirmed his earlier signed statements that were set forth and attached as exhibits to plaintiff’s applications for hearings dated March 17, 1956, and November 13,1957. Signed statements of Doctors Duncan H. C. Ferguson and H. E. Oxman were also submitted to the Board as exhibits to each of plaintiff’s three applications for correction of his records.
26. Col. Benjamin Hardy Sullivan, Jr., Medical Corps, United States Army, and Chief of the Gastroenterology Service at Walter Reed Army Hospital, a witness for defendant, expressed the opinion that, based upon his examination of the medical records in the case, the percentage rating assigned for plaintiff’s disability is correct; that marginal ulcers were not present in 1946 when plaintiff was retired for physical disability or in 1949 when plaintiff was examined at the Lahey Clinic; that the removal of a gall bladder does not, in itself, automatically incapacitate an officer for full military service and physically disqualify him for performance of active duty; and that there is no evidence in the medical records, including the Lahey Clinic records, which establishes the existence of severe residuals or severe symptoms as a result of the removal of plaintiff’s gall bladder. Colonel Sullivan has never examined the plaintiff.
27. Lt. Col. Aubrey Kenna Brown, Jr., Medical Corps, United States Army, and Assistant Chief of the Otolaryn- *303 gology Service, Walter Reed Army Hospital, testified that, in Ms opinion, based npon his examination of the medical records in the case, including the Lahey Clinic records, plaintiff did not have Meniere’s syndrome, or Meniere’s disease, while in the service. He has never examined the plaintiff.
28. The evidence of record in support of a finding that plaintiff was suffering from Meniere’s syndrome, or Meniere’s disease, during his period of active military service is quite meager. The record is deemed to be insufficient to warrant the assignment of a compensable rating for such condition as of the time of release from active duty or from the effective date of plaintiff’s retirement. The Veterans Administration has granted service connection for this condition, and the effective date of the 30 percent compensable rating which was assigned is September 21, 1955, the date plaintiff’s claim was filed with that agency. The assignment of such evaluation by the Veterans Administration, effective nearly 10 years subsequent to the officer’s retirement in 1945, cannot be utilized as a basis for a finding that such a disability, or any compensable condition due to Meniere’s disease, existed at the time of retirement. If the so-called Meniere’s disease is eliminated from consideration in evaluating the plaintiff’s disabling conditions for the purpose of assigning an appropriate percentage rating, there will remain the two conditions: a deformity of stomach (60 percent), and removal of gall bladder (10 percent). The resulting combined rating of these two conditions would be only 60 percent under the applicable rating schedule.
29. Based upon the complete record, it is found that the action of the Department of the Army, including determinations by the Army Board for Correction of Military Records, in denying a rating in excess of 60 percent for plaintiff’s disabilities, was not arbitrary or capricious and is supported by substantial evidence.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

 The evidence does not establish the existence of severe symptoms, which finding' is required for a 3ft percent evaluation of the residual condition. Should the condition be classified as “Removal of gall bladder with mild symptoms,” ratable at 10 percent, the combined rating for the individual evaluations of 60, 30, and 1ft percent would still be 80 percent, under the applicable schedule. However, if the mildi Meniére’s disease were also rated at 10 percent, the combined rating for all these conditions would be 7ft percent.