Per Curiam:
This case was referred to Trial Commissioner Paul H. McMurray with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on November 3,1966. Exceptions to certain of the findings and the conclusions of law were filed by the defendant and the case has been submitted to the court on oral argument of counsel *548 and defendant’s brief. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined in further proceedings pursuant to Pule 47(c).
Commissioner McMurray’s opinion,* as modified by the the court, is as follows:
Plaintiff enlisted in the U.S. Naval Reserve on June 2, 1945 and was discharged after approximately 14 months’ service. He enlisted in the Regular Army on September 10, 1948, and served on active duty until he was placed on the Temporary Disability Retired List (hereafter TDRL). He remained on TDRL until August 31, 1963, when he was removed from TDRL and honorably discharged from the Army.
While on active duty in the Regular Army plaintiff was hospitalized in November 1951 and found to be suffering from active pulmonary tuberculosis. He was treated by the administration of drugs and later by extensive surgery.
In June 1957 Brozik was treated at Brooke Army Hospital for serum jaundice, found to be secondary to blood transfusions which he received during the surgery performed in April 1957. During the period of hospitalization at Brooke Army Hospital his general condition improved and he was discharged from the hospital in January 1958 for a trial of active duty. In August 1958 he was hospitalized at Brooke Army Hospital for evaluation of his condition.
A Medical Board which convened on August 27, 1958, reported the following diagnoses:
1. Cirrhosis, liver, n.e.c., severe, coarse, nodular (following acute degeneration of the liver), secondary to serum hepatitis, manifested by portal hypertension and esophageal varices. Treated, improved. “MAY BE PERMANENT” “UNFIT” LD: Yes. VA Code 7312.
2. Tuberculosis, pulmonary, moderately advanced, right upper lobe, inactive 68 months. Exercise status *549 IV, 1955 NTA Diagnostic standards. LD: Yes “FIT” VA Code 6722.
3. Absence, acquired, apical and posterior segments upper lobe of right lung following operation 31 July 1952 for treatment of tuberculosis. LD: Yes “FIT” VA Code 6816.
4. Absence, acquired, right 1st, 2nd and 3rd ribs following tailoring thoracoplasty, 27 August 1952. LD: Yes “FIT” VA Code 5297.
The same Medical Board recommended that Brozik be presented to a Physical Evaluation Board (hereafter PEB) for consideration of his return to military duty.
Brozik appeared before a PEB which found that (1) he was physically unfit to perform the duties of his rank and grade by reason of physical disability, (2) he had a 70 percent disability at that time, and (3) recommended that he be placed on TDBL with reexamination within 12 months.
On October 28,-1958, Brozik filed a claim with the Veterans Administration (hereafter V.A.) for disability compensation. The final combined disability rating was “100% from 10-28-58 to 1-23-60” and “30% from 1-24-60.” (The several disability ratings for plaintiff’s various ailments are set out in fin/ling 5.)
Another Medical Board was convened on November 12, 1959, and determined that plaintiff was “not motivated for further active duty” and recommended that he be presented to a PEB “for consideration of return to duty.” A PEB was convened at Brooke Army Hospital on November 23, 1959 and continued on January 5,1960. The Board’s report, signed by Col. W. H. Langdon, Armor., R.A., President, stated, in pertinent part, as follows:
* * * * *
In its initial consideration of this case on 23 November 1959, it was noted that the Medical Board found the member fit. It was also noted that the Chief of the Gastroenterology Service had concurred in this finding. At the request of counsel, Captain Enrique Mendez, Internal Medicine, appeared and testified he felt that the member was unfit for military duty at this time on the basis of subjective complaints of fatigability and lassitude, and objective findings of physical evidence of cirrhosis of the liver, as well as abnormalities in the BSP retention studies and serum protein electrophoresis. *550 Captain Mendez stated be bad recently discussed this case with lieutenant Colonel Palmer, who concurred in this revised evaluation. In view of these different and purportedly revised opinions, the board requested an addendum to the Medical Board Proceedings. On reconsidering the case and reexamining the member, Colonel Palmer stated that he felt the member is physically disqualified for military service because of the nature of his liver disease. He describes splenomegaly and a hard, rounded liver. He felt that one should not be influenced by the relatively good results from the conventional liver function studies. He stated that the important thing is that the serum proteins are severely deranged and felt that this will no doubt be permanent and progressive. He felt that there is every reason to believe that severe disability will develop possibly within a relatively short period of time.
In view of the above, the 'board agrees with the addendum to the Medical Board Proceedings and accordingly recommends that the member be found unfit for further service and be continued on the Temporary Disability Retired List, with reevaluation in 18 months.
On October 2, 1962, plaintiff was reexamined, including a chest X-ray on October 10, 1962. In the report of this examination under “Physical Profile” he was assigned a P-4 classification which always means the individual is unfit for military service. The examining doctor found that Brozik was not qualified for military service, citing the history of cirrhosis and pulmonary tuberculosis.
The plaintiff was admitted to Letterman General Hospital on April 1, 1963. After an examination during that period of hospitalization he was again assigned a P-4 profile, reflecting his unfitness for military service.
Captain Peter Webber, M.C., U.S. Army, member of a Medical Board which convened May 2,1963, examined plaintiff on April 25, 1963, and reported that, among other ailments, Brozik was suffering from “Cirrhosis * * * secondary to serum hepatitis * * The unanimous recommendations of the Board were as follows:
The Medical Board finds this member unfit for further military service under the provisions of AT?. 40-501, Chapter 3, Section II, Paragraph 3-5-d, and recommends that he be presented to Physical Evaluation Board for permanent retirement from active duty.
*551 These recommendations were approved by Colonel W. C. Berry, Chief, Professional Services, Approving Authority.
Captain Webber was a witness at the formal trial held in connection with the claim of Brozik. His testimony strongly supported plaintiff’s claim for permanent disability retirement. After reviewing the record before the trial, Dr. Web-ber clearly indicated that the prior opinion he expressed as a member of the Medical Board, which unanimously recommended permanent retirement from active duty, remains unchanged.
A PEB was convened on May 31, 1963. That Board was composed of Col. Young, Artillery, Regular Army, President of the Board; Lt. Col. Oliver, Engineers, U.S. Army Reserve; and Captain Bedynek, M.C., Regular Army. Plaintiff was represented by Col. Van Way, Infantry, Regular Army, as counsel. The PEB found that plaintiff did not meet the criteria for unfitness as set out in “para 3-5d or 3-37, AR 40-501.” However, AR 40-501, Chapter 3, Section II, Paragraph 3-5 in listing “causes for medical unfitness for further military service” includes the following condition:
¿¡i % % iji
d. Cirrhosis of the liver: Recurrent jaundice, ascites or demonstrable esophageal varices or history of bleeding therefrom; failure to maintain weight and normal vigor.
:}{ sjt ‡ * &
The Physical Profile utilized by the Department of Defense in determining whether individuals are physically fit for military duty is portrayed by using the letters P U L H E S. Each letter represents a part, organ, or system of the human body. For example, the letter P represents an individual’s physical condition. A number, ranging from Nos. 1 to 5, is usually assigned by (1) the Medical officer who examines the individual, (2) a Medical Board, or (3) a PEB.
When No. 1 is assigned to any letter in the Physical Profile it means the individual is fit for military service; No. 2 means the individual is fit for military duty, although there may be some minimal condition involved; the assignment of No. 3 to any letter in the Profile means that some significant problems exist, but the individual is fit for duty; when either *552 No. 4 or No. 5 is assigned to any part of the Physical Profile the individual is unfit for military duty.
Plaintiff has suffered from conditions which have been both chroniG and permanent for many years. Several Medical Boards have found that he is permanently unfit for military service. Plaintiff was assigned a P-4 category in his Physical Profile on four occasions, as the result of physical examinations conducted in August 1958, April 1961, October 1962 and April 1963. Nevertheless, a PEB (composed of one medical officer and two line officers) convened on May 31, 1963, recommended that plaintiff be found “Fit”; the Army Physical Beview Council on June 20,1963, recommended that the findings of the PEB be approved; and on July 25, 1963, the Secretary of the Army instructed that he be removed from TDBL. Plaintiff was removed from TDBL on August 31, 1963, and honorably discharged from the Army.
It is found that the record as a whole amply supports a finding that plaintiff is entitled to permanent disability retirement pay based on his office and grade in the Begular Army at the time of his discharge, less amounts received as disability compensation from the V.A. Plaintiff’s recovery will be under Buie 47 (c).
FINDINGS oe Fact
1. Plaintiff enlisted in the U.S. Naval Beserve on June 2, 1945, and was discharged from that branch of military service on August 1, 1946. He also enlisted in the Begular Army on September 10, 1948, and served continuously on active duty until October 28,1958, when he was placed on the Temporary Disability Betired List (hereafter TDBL). He remained on TDBL until August 31, 1963, when he was removed from TDBL and given an honorable discharge from the Army.
2. Plaintiff was hospitalized in November 1951 while on active duty in the Begular Army, and found to be suffering from active pulmonary tuberculosis. He was treated by drugs and later by extensive surgery (removal of the apical and posterior segments of the upper lobe of the right lung in July 1952; a tailoring thoracoplasty in August 1952; and an exploratory thoractomy in April 1957). In June 1957 he *553 was admitted to Brooke Army Hospital and treated for serum jaundice, secondary .to blood transfusions received during the operation in April 1957. During the period of hospitalization in June 1957 his general condition improved and since it appeared that he might be qualified for military duty he was discharged from the hospital in January 1958 for a trial of active duty. In August 1958 he was rehos-pitalized for evaluation at Brooke Army Hospital.
3. A Medical Board convened on August 27, 1958, diagnosed plaintiff’s condition as:
1. Cirrhosis, liver, n.e.c., severe, coarse, nodular (following acute degeneration of the liver), secondary to serum hepatitis, manifested by portal hypertension and esophageal varices. Treated, improved. “MAY BE PERMANENT” “UNFIT” LD: Yes. YA Code 7312.
2. Tuberculosis, pulmonary, moderately advanced, right upper lobe, inactive 68 months. Exercise status IV, 1955 NTA Diagnostic standards. LD: YES “FIT” VA Code 6722.
3. Absence, acquired, apical and posterior segments upper lobe of right lung following operation 31 July 1952 for treatment of tuberculosis. LD: Yes “FIT” YA Code 6816.
4. Absence, acquired, right 1st, 2nd and 3rd ribs following tailoring thoracoplasty, 27 August 1952, LD: Yes “FIT” YA Code 5297.
The Medical Board also recommended that plaintiff be presented to a Physical Evaluation Board (hereafter PEB) “for consideration of return to duty.”
4. Plaintiff appeared before a PEB on August 29, 1958. The Board found that (1) he was physically unfit to perform the duties of his office, rank or grade by reason of physical disability incurred while entitled to receive basic pay as a regular member of the Army, (2) he had a 70 percent disability, and (3) recommended that he be placed on TDRL with a reexamination in 12 months.
The Physical Review Council (hereafter PRC) and the Secretary of the Army approved the action of the PEB on October 13, 1958. The report of the PRC contained the following statement:
The degree of disability resulting from tuberculosis, pulmonary, chronic, moderately advanced, inactive 6 months is properly rated at 50 percentum under codes *554 6722/6724 of tbe VA Schedule for Eating Disabilities. An adjusted combined rating of 90 percentum is commensurate with the member’s disabilities.
5. Plaintiff filed a disability claim with the Veterans Administration (hereafter V.A.) on October 28, 1958. On November 14, 1958, the V.A. rated plaintiff as follows:
The veteran is severely disabled. A 100 percent evaluation is in order to determine what the veteran can do under the ordinary conditions of life with re-examination scheduled in ten months from discharge from service.
1. Incurred Korean Conflict VK 1(a) Pt I Par 1(a) (Sec. 810 PL 85-56) 100% from 10-28-58
7345 CIBEHOSIS OF TPIE LIVES, EES. OF SEBUM HEPATITIS 50% from 10-27-58 to 9-30-59 30% from 10-1-59
6722 TUBEECULOSIS, PUL. MOD. ADV. INACTIVE FEOM 9-30-53.
20. Tuberculosis completely arrested from 9-30-53 entitled special monthly compensation.
VE 1(a) Pt I Par II subpar (q) from 10-28-58 (Sec. 315 PL 85-56)
# sfc ❖ Jj«
The V.A. rating of November 14, 1958, was amended on November 24,1959, as follows:
1. SC Inc KC, 38 USC 100% from 1-1-59 to 1-23-60 0% from 1-24-60
7345-581 CIBEHOSIS HEPATIC, EESIDUALS OF 30% from 10-1-59
6722 PULMONAEY TUBEECULOSIS, MOD-EEATELY ADVANCED, INACTIVE FEOM 9-30-53
20. Tuberculosis completely arrested from 9-30-53; entitled special monthly compensation from 10-28-58, 38 USC 314, Sub Sec (q)
COMBINED: 100% from 1-1-59 to 1-23-60 30% from 1-24-60
•Í4 »}» íjs *
*555 On January 12,1960, on the basis of “a clear and unmistakable error,” the Y.A. amended the rating of November 24, 1959, as follows:
1.SC Inc KC, PL 85-56 Sec. 310, 38 USC 310 100% from 10-28-58 to 1-23-60 0% from 1-24-60
7345-581 CIRRHOSIS, HEPATIC, RESIDUALS OF • 50% from 10-28-58 to 9-30-59 30% from 10-1-59
6722 TUBERCULOSIS, PULMONARY, MODERATELY ADVANCED, INACTIVE FROM 9-30-53 COMBINED: 100% from 10-28-58 to 1-23-60 30% from 1-24-60
$ * * $ *
20. Tuberculosis completely arrested from 9-30-53, entitled special monthly compensation. PL 85-56 Sec. 315 (q), 38 USC 314 Subsec (q) from 10-28-58.
* * * * *
6. A Medical Board was convened on November 12,1959, and considered various reports of laboratory studies, evaluations, and consultations. The Board’s findings included the following diagnoses and recommendation:
1. 0036 Tuberculosis, pulmonary, moderately advanced, right upper lobe, inactive 80 months. Exercise Status IV (1955 NTA Diagnostic Standards).
LOD: Yes. FIT MAY BE PERMANENT VACode: 6722
2. 9100 Absence acquired, surgical, apical and posterior segments, upper lobe of right lung following operation 31 Jul 1952 for treatment of tuberculosis.
LOD: Yes. FIT IS PERMANENT VA Code: 6816
3. 9100 Absence acquired, right, 1st, 2nd and 3rd ribs, following thoracoplasty 27 Aug 1952.
LOD: Yes. FIT IS PERMANENT VA Code: 5297
*556 4. 5814 Cirrhosis, liver, n.e.c., moderate, nodular (following acute degeneration of liver), secondary to serum hepatitis. Improved.
LOB: Yes. FIT MAY BE PERMANENT VA Code: 7312
*****
Patient be present [sic] to a PEB for consideration of return to duty.
Patient is not motivated for further active duty.
7. A PEB was convened on November 23, 1959. Captain Mendez, a Medical officer, appeared as a witness for plaintiff and gave testimony with respect to plaintiff’s condition, especially concerning hepatitis and cirrhosis of the liver. He expressed the opinion that, based on Brozik’s symptoms and condition he should NOT be returned to military duty. He further stated that if Brozik should be returned to active duty, field duty would be precluded. The PEB recommended “that this individual be continued on the Temporary Disability Retired List, to be reevaluated in 18 months.”
8. Lt. Col. Eddy D. Palmer, M C., a noted specialist in gastroenterology, was consulted at the time Brozik’s condition was reevaluated on October 14, 1959, and concurred in the determination that the patient was fit for general military service at that time. In a later consultation report dated December 21,1959, entitled “Addendum to Medical Board”[1] the same gastroenterologist made the following statement:
To me, this has been a more than usually difficult case in which to judge disability. This is because the severe liver disease which is unquestionably present has shown varying degrees of ability to regain its competence and because at the moment the liver seems well able to carry out its basic functions. Nevertheless, the liver has proved incompetent in the past, and because of the chronic nature of the disease, it can be expected to become incompetent at any moment in the future. The prognosis, therefore, is poor and it can be said unquestionably that this man would be a very poor risk for continued service in the army. To repeat, this has to do with the probability of future complications rather than the present presence of recognizable complications.
I believe that this man is physically disqualified for further military service because of the nature of his liver *557 disease. On examination today I find that splenomegaly is present, but at the moment this is the only evidence of vascular incompetence of the liver. There are no ascites or distended abdominal veins. The liver is hard and rounded, as one would expect in view of the proven histopathological chronic liver damage which is severe. Although the esophagoscopy examination of last October showed that the varices had disappeared, we know that they almost certainly will re-appear in the future. One should not be influenced too much by the relatively good results from the conventional liver function studies. The important thing is that the serum proteins are severely deranged, and this will no doubt be a permanent and probably progressive derangement. Although it is difficult at this moment to observe in this man an obvious disability as a result of the liver disease, there is every reason to believe that such disability will develop, possibly within a relatively short time, and that he would be a very poor risk for the army. There is no question, therefore, m my mind that diagnosis #4 (Cirrhosis) is permanent and progressive, and that it should, therefore, be considered incapacitating for duty.
On December 28, 1959, the Medical Board members prepared a second Addendum to Medical Board,[2] which is as follows:
Following further evaluation at GI Clinic and complete review of previous reports and examinations it was felt by the GI Consultant that this man’s liver condition is very likely permanent and progressive, and is extremely likely to became more severe in the future. Therefore it is the recommendation of this Medical Board he be continued on TDRL and be re-evaluated in 18 months.
Diagnosis should read:
5814 Cirrhosis, liver, n.e.c., moderate, nodular (following acute degeneration of liver) secondary to serum hepatitis. Improved.
LOD: Yes. UNFIT MAY BE PERMANENT
9. The PEB of November 28, 1959, stated on January 5, 1960, in the record of its continued proceedings that plaintiff, “is physically unfit to perform the duties of his office, * * * by *558 reason of physical disability * * * incurred while entitled to receive basic pay as a * * * regular member” of the Army. The Board further stated “such unfitness is 90 percentum disabling, in accordance with the standard schedule of rating disabilities in current use by the Veterans Administration.” The Board concluded as follows:
It is recommended that this individual be continued on the Temporary Disability Retired List, to be reevaluated in 18 months.
10. Plaintiff was accorded a periodic pnysical examination in April 1961 at Nellis Air Force Base, Nevada. The examining physician reported that plaintiff had worked full time as a bookkeeper for the previous 9 months and had noticed “moderate fatigue at the end of a day.” He experienced “no gastric symptoms, no edema or jaundice, no mental confusion, etc.” and his weight and appetite were stable. The report bears the notation, “Impression: Post necrotic cirrhosis with questionable portal hypertension.” The doctor felt that plaintiff’s disability was not as great as he was rated at that time and that he could perform limited duty. The examining doctor further stated that if limited duty was not feasible plaintiff could be medically retired at a more appropriate disability rating.
11. On October 2, 1962, plaintiff was reexamined, with a chest X-ray on October 10, 1962. Under Physical Profile he was assigned a P-4, which meant he was unfit for military duty. Captain Charles W. Zumpet, the examining doctor, found that he was not qualified for military service, citing the history of cirrhosis and pulmonary tuberculosis, and recommended that Brozik be retained on TDRL.
12. Brozik was admitted to Letterman General Hospital on April 1, 1963. Based upon an examination accomplished during this period of hospitalization, he was again assigned a P-4: reflecting his unfitness for military service.
Captain Peter B. Webber, M.C., examined plaintiff on April 25, 1963. Based upon his examination Dr. Webber reported, in part, during proceedings before a Medical Board (of which he was a member) convened on May 2,1963, “for final evaluation of cirrhosis” as follows:
*559 INTERIM! HISTORY: The patient has worked steadily in his bookkeeper position for the past year without time lost due to illness. * * * There are no complaints of headache, confusion, or dizziness. Weight * * * is unchanged. He states that after putting in a particularly hard day’s work he feels somewhat run down and tired at night. * * * He is able to bowl without difficulty. * * *
CURRENT STATUS: * * * During his last 3 evaluations esophageal varcies have not been demonstrated and he has manifested a general improvement in his liver function studies. The patient still continues to complain of easy fatigability, essentially unchanged from the time of his retirement, and a liver biopsy done at this time revealed a wide band of fibrous connective tissue and densely infiltrated with round cells lying adjacent to liver parenchyma, which was considered to be compatible with post necrotic cirrhosis.
DIAGNOSIS:
1) 680-952 Cirrhosis, liver, coarse, nodular, following acute degeneration of liver secondary to serum hepatitis, moderate. Untreated, unchanged. LOD, Yes. Disabling. Manifested by abnormal microscopic changes and chronic easy fatigability. (VA Code 7312).
2) 360-1235 Tuberculosis, pulmonary, moderate advanced, right upper lobe, inactive 120 months. Exercise status IV, 1955 NTA Diagnostic Standards. LOD, Yes. Not disabling. (VA Code 6722).
3) 363-415.X Absence, acquired, apical and posterior segments, upper lobe of right lung, following operation 31 July 1952 for treatment of tuberculosis. LOD, Yes. Not disabling. (VA Code 5297).
4) 229-10 Absence, acquired, right 1st, 2nd and 3rd ribs, following tailoring thoraco-plasty, 27 August 1952. LOD, Yes. Not disabling. (VA Code 5297).
The unanimous recommendations of that Board were:
RECOMMENDATIONS: The Medical Board finds this member unfit for further military service under the provisions of AR 40-501, Chapter 3, Section II, Para *560 graph 3-5-d, and recommends that he be presented to Physical Evaluation Board for permanent retirement from active duty.[3]
The above recommendations were approved on May 8,1968, by Colonel W. C. Berry, Chief, Professional Services, Approving Authority.
13. A PEB was convened at Letterman General Hospital, San Francisco, California, on May 31, 1963. This Board was composed of Colonel Young, ARTY-RA; Lt. Col. Oliver, CE(GS)-USAR; and Captain Bedynek, MC-RA. Plaintiff waived his right to appear before the Board, but was represented by counsel, Col. Van Way, INF-RA. The PEB considered the case on the basis of plaintiff’s entire medical record and made the following comment:
The Board finds that Sgt Brozik does not meet the criteria for unfitness as given in para 3-5d or 3-37, AR 40-501, and recommends that he be found “Fit”.
14. On June 7, 1963, plaintiff submitted a rebuttal statement to the Army Physical Review Council in Washington, D.C. The Council, on June 20, 1963, reported that the proceedings of the PEB had been reviewed and recommended that the findings be approved. Under date of July 25,1963, the Secretary of the Army, on the recommendation of the PEB, instructed that plaintiff be removed from TDRL.
15. On July 25, 1963, an order was issued removing plaintiff from TDRL as of August 31,1963. On the same day he was advised that he had the opportunity to enlist in the Regular Army, retaining the rank of Sergeant. Plaintiff declined to avail himself of this opportunity and on August 31, 1963, he was honorably discharged from the Army.
16. Plaintiff, on September 30, 1963, applied to the Army Board for the Correction of Military Records, requesting that he “be Reinstated on the permanent disability Retirement List, with pay.” In a memorandum dated January 13, *561 1964, the Surgeon General’s office advised the Army Board for the Correction of Military Records as follows:
1. Records in the case of the above-named individual have been carefully reviewed in this office and in the offices of the appropriate consultants to The Surgeon General.
2. Review of the records show that this applicant had active pulmonary tuberculosis in 1951, treated by medications and partial resection of the right upper lobe. Further exploration in 1957 required whole blood transfusions. This was followed by a homologus serum jaundice and a post necrotic cirrhosis. Because of this he was placed on TDRL in October 1958. Periodic evaluations showed the condition had improved and become stable with only slight residuals and no evidence of recurrent jaundice, ascitis, demonstrable oesophageal varices or bleeding therefrom. His weight has been stable and his work history indicates no time lost as a bookkeeper because of illness.
3. The opinion is expressed that the applicant’s claim of error or injustice in the medical aspects of his removal from TDRL is not substantiated by the recorded medical evidence and he had no physical or mental impairment of such a nature or degree of severity which woidd have warranted his retirement for disability under the rules, laws, regulations and policies then in effect.
Based on the foregoing advice, the Army Board for Correction of Military Records informed plaintiff on February 28, 1964, that
* * * the Army Board for Correction of Military Records determined on 12 February 1964 that insufficient evidence had been presented to indicate probable material error or injustice; accordingly, your application was denied.
17. Dr. Webber testified during the trial that should he serve on a Medical Board at the present time, he would again recommend permanent disability retirement for plaintiff. He further testified that he has served on many Medical Boards. He stated that a patient who appears at a Medical Board hearing is usually advised of the findings of the board; they are discussed, or explained to him, and he is told that he may make an oral statement to the board or submit a written statement. In considering plaintiff’s claim, the three Medical Board Members met at the same time and reviewed *562 laboratory reports, physical findings, historical data and the complete medical record.
When a PEB is convened the members are required to consider the military requirements involved and the physical condition of the individual seeking disability retirement. In some instances the PEB members may reach an agreement with respect to the individual’s physical condition, but fail to agree as to how such condition may affect the performance of military duty. The medical member of the PEB should be an expert in the medical field and the line officer members should be experts in the area of military requirements. Physical Evaluation Boards usually have before them the entire medical record of the individual who appears before them.
18. The so-called Physical Profile is represented by the letters P U L H E S. Each letter represents a part, organ or system of the human body. For example, the letter P represents the individual’s general physical condition (heart disease would be represented by P). A numerical designation, ranging from Nos. 1 to 5, is assigned to each letter in the Profile. "When No. 1 is assigned to any letter in the Profile it means the individual is completely fit; No. 2 means there are some minimal conditions involved; No. 8 means there are some significant problems with the patient, but he is still fit for duty. When No. 4 or No. 5 is assigned to any part of the Physical Profile it means the individual is unfit for military duty.
The medical examination of August 15, 1958, assigned a P-4 evaluation under plaintiff’s Physical Profile after a determination that (1) lungs and chest, (2) vascular system, and (8) abdomen and viscera were abnormal. He was found to be permanently unfit for duty by reason of physical disability and placed on TDEL. Based upon physical examinations of plaintiff conducted by Army Medical officers in August 1958, April 1961, October 1962 and April 1963, he was, on each occasion, assigned a P-4 category in his Physical Profile. In this claim it has been clearly established that we are considering chronic, permanent disabilities which warrant the assignment of percentage ratings far in excess of 30 percent. Plaintiff was carried on the Temporary Dis *563 ability Retired List for 5 years. Such procedure appears unwarranted when it has been found by numerous Medical Boards that he was permanently unfit for military duty.
Conclusion of Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery is reserved for further proceedings under Rule 47 (c).

The opinion, findings of fact and recommended conclusion of law are submitted under tile order of reference and Rule 57(a)..

 The PEB convened on November 12, 1959.

 This is the PEB of November 12, 1989, at its continued proceedings.

AR 40-501, Chapter 3, Section II, Paragraph 3-5, in listing conditions which are considered “causes for medical unfitness for further military service” states in part as follows :
d. Cirrhosis of the Uver: Recurrent jaundice, ascites or demonstrable esophageal varices or history of bleeding therefrom; failure to maintain weight and normal vigor.