true, the Court is of the opinion that the jurisdictional question, which was not decided by Judge Davies, should now be passed upon, and the actions finally disposed of.

The motion of the Government in the three actions for judgment on the pleadings will be sustained and an appropriate form of judgment will be submitted in each case.

**Robert Walter HEINS**

v.

**The UNITED STATES.**

**No. 246–53.**

United States Court of Claims.

March 6, 1957.

Thomas H. King, Washington, D. C., for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This suit involves a claim by an Air Force Reserve officer for active-duty pay and allowances for two months, April and May, 1952, and for disability retirement pay since June 1, 1952. Defendant counter claims for pay and allowances paid to plaintiff for the period December 6, 1951, to April 1, 1952.

The questions presented are (1) was plaintiff on active duty as an officer of the United States Air Force from December 6, 1951 to May 31, 1952; (2) is plaintiff entitled to the pay and allowances of a first lieutenant of the United

States Air Force for the months of April and May, 1952; and (3) is plaintiff entitled to disability retirement pay.

Plaintiff enlisted in the Reserve Corps, Army of the United States, on November 28, 1942 and reported for active duty as a private on March 2, 1943. He remained on duty as an enlisted man until May 19, 1944. Plaintiff was commissioned and entered on active duty as a second lieutenant on May 20, 1944, remaining on such active duty until December 2, 1945. From December 3, 1945, he was in the Officers' Reserve Corps in an inactive status until August 15, 1947. At that time plaintiff took 15 days of active duty for training purposes, from August 16 to August 30, 1947. He then reverted to an inactive status as a second lieutenant in the Air Corps Reserve and remained in such status to and including March 7, 1948. On March 9, 1948, he was promoted to first lieutenant an remained in that status until September 7, 1951.

In September 1951, prior to being issued orders for extended active duty, plaintiff was given a physical examination. He was found physically qualified, returned to inactive duty, and subsequently issued orders for extended active duty. The effective date of his orders to active duty was December 6, 1951. He was to report to Mather Air Force Base in California on December 12, 1951, and thence to Randolph Field in Texas.

In November 1951, while plaintiff was at his home in Wisconsin, he entered a civilian hospital under the care of a civilian physician, suffering from a type of rheumatic fever.

On December 6, 1951, the effective date of his orders, and while still in a civilian hospital, plaintiff had the local Red Cross representative send a telegram to Mather Air Force Base, California, advising that he was hospitalized at the Wisconsin General Hospital "with suspected rheumatic fever and unable to travel." There followed a series of communications, and on December 18, 1951, plaintiff's civilian doctor wired Randolph Air Force Base, Texas, that it would be a minimum of four weeks before plaintiff could be released. On January 5, 1952, the Surgeon, Randolph Air Force Base, Texas, addressed a communication to the Surgeon General of the Air Force, Washington, D. C., requesting instructions as to the disposition of plaintiff. As a result of this request, and in the belief that plaintiff was on active duty, in January 1952 the Office of the Surgeon General sent instructions to Truax Air Force Base at Madison, Wisconsin, to "return" plaintiff to military control when his physical condition would permit.

The Chief of the Hospitalization and Evacuation Division of the Office of the Surgeon General, who sent the orders to Truax, frequently was asked for assistance in returning military personnel under civilian medical care to military medical facilities. It frequently happened that military personnel on active duty became hospitalized in civilian hospitals or came under civilian medical care for various reasons, such as accidents while on leave. In such cases it was the policy of the Air Force to return these persons to military facilities as soon as possible to save the expense of civilian hospitalization. There was no authority to take such steps unless the individual concerned was actually on active duty.

On January 15, 1952, plaintiff was taken in an Air Force ambulance from his home in Wisconsin to the Truax Air Force Base hospital in Madison, Wisconsin. This was done with his knowledge and consent and the consent of his civilian physician.

Under orders dated January 24, 1952, plaintiff was transferred by train to Chanute Air Force Base, Illinois, for observation and treatment. The orders indicated that plaintiff was assigned to Randolph Air Force Base, Texas, and further that upon completion of observation and treatment at Chanute, he was to be returned to his home station.

On February 29, 1952, plaintiff was assigned to Detachment of Patients at Chanute Air Force Base and relieved from his assignment to Randolph Air Force Base.

While at Chanute plaintiff was issued an identification card by the Air Force, which stated thereon under the signature of the security officer as follows:

"Warning

"Issued for official use of the holder designated hereon During Active Service Only. Use or possession except as prescribed is unlawful and will make the offender liable to heavy penalty."

On April 21, 1952, plaintiff appeared before a medical disposition board at Chanute Air Force Base. This board diagnosed his illness as follows:

"Rheumatic valvulitis, inactive, mitral. LD—No, EPTS, not aggravated by service.

"Approximate date of origin— 1935."

By order dated April 22, 1952, plaintiff was transferred from the hospital at Chanute Air Force Base to the Air Force hospital at Wright-Patterson Air Force Base, Ohio. He arrived there April 23, traveling in his private automobile.

On April 16, 1952, the Office of the Judge Advocate General issued a memorandum stating that plaintiff had never entered upon active duty and had never attained an active duty status and steps should be taken to have his pay and allowances stopped at once. Plaintiff was notified of this development upon his arrival at the hospital that day and voluntarily remained for the purpose of appearing before a physical evaluation board on May 1, 1952. Plaintiff did not receive any pay and allowances for any period after April 1, 1952.

Plaintiff appeared before the physical evaluation board at Wright-Patterson Air Force Base on May 1, 1952, which board found that plaintiff's disease existed prior to service, but was service aggravated, and that the degree of disability was 30 percent. The board further found that plaintiff was on active duty as an officer and therefore was entitled to be retired by reason of physical disability.

When plaintiff appeared before the physical evaluation board he was informed that the board's recommendations were of an advisory nature only. These advisory recommendations were forwarded to the physical review board, which on May 27, 1952, found that plaintiff's disability was the normal progression of a disease that existed prior to December 6, 1951; that it had not been aggravated since that date; and that plaintiff was not entitled to pay for the reason he was physically unable to perform active duty. The physical review board further found that plaintiff's disability was in fact only 10 percent.

Plaintiff filed a rebuttal statement and upon receipt thereof the physical review board again reviewed his case and made no change in the findings. On July 15, 1952, the case was forwarded to the Physical Disability Appeal Board, which board refused to take action because of the Advocate General's previous ruling. On August 6, 1952, the Office of the Judge Advocate General of the Air Force reaffirmed its earlier ruling that plaintiff had not attained an active-duty status.

Plaintiff still holds a commission in the Air Corps Reserve.

Plaintiff has received pay and allowances for the period December 6, 1951, to April 1, 1952, in an amount not disclosed by the evidence.

■ On the first issue of whether plaintiff was on active duty as an officer in the United States Air Force, the answer is obvious. He became ill and entered the civilian hospital in Wisconsin before his active-duty orders became effective. He was still in the hospital and physically unable to comply with his orders on December 6, 1951, the effective date of his orders. He remained in the civilian hospital until December 7, 1951, and after being sent to his home, remained there under the care of his family physician until January 15, 1952. Therefore, he did not and could not report to the designated duty station on December 12, 1951, as required by his orders, nor could he have started to comply with orders on December 6, 1951.

He would not be considered on active duty until he had at least begun his travel to the duty station as directed by the orders. Furthermore, plaintiff was clearly not physically able to perform active duty on the effective date of his orders or on January 15, 1952, when he entered the Air Force hospital. We can find no authority for the Air Force to assign an officer to active duty if he is not physically qualified. Plaintiff remained physically unqualified thereafter, and consequently never achieved an active-duty status.

Section 201(e) of the Career Compensation Act of 1949, 63 Stat. 802, 807, 37 U.S.C.A. § 232(e), defines who shall be entitled to receive basic pay and provides in pertinent part as follows:

"(e) All members of the uniformed services when on the active list, when on active duty, or when participating in full-time training, training duty with pay * * *, shall be entitled to receive the basic pay of the pay grade to which assigned * * *: *Provided,* That in accordance with regulations prescribed by the President, in the case of members of the uniformed services called or ordered to extended active duty in excess of thirty days, active duty shall include the time required to perform travel from home to first duty station and from last duty station to home by the mode of transportation authorized in orders for such members: * * *."

■■ Thus it can be seen that plaintiff never having achieved active-duty status would not be entitled to receive pay under the above statute. Moreover, plaintiff was taken to the Air Force hospital in the belief that he was on active duty. All events transpiring later were still under the assumption that plaintiff was on active duty and the sums he received were paid to him under the same assumption. The question then confronting us is, since plaintiff was not entitled to active duty pay, can he keep the money paid him.

Plaintiff was taken from his home by the Air Force and, under what he believed to be competent orders, placed in a hospital. The remainder of the time spent in various hospitals was also under what he believed to be competent orders. We cannot assume he was arrested or kidnapped, nor can we assume plaintiff had the right to refuse to go. Under the Uniform Code of Military Justice, article 92, Act of May 5, 1950, 64 Stat. 107, 136, 50 U.S.C.A. § 686, any person subject to the code who violates or fails to obey a lawful order shall be punished as a court-martial may direct. Article 2 of the code, supra, 64 Stat. at page 109, 50 U.S.C.A. § 552, provides that any person lawfully called or ordered for training in the Armed Forces is subject to the Uniform Code of Military Justice. Therefore, we find that plaintiff in good faith followed the directions given him by the Air Force, and while not paid as an active-duty officer under the Career Compensation Act of 1949, *supra,* was paid as a *de facto* active-duty officer and is entitled to retain what was paid him.

It would seem to be completely illogical to say that plaintiff was entitled to the money already paid him as a *de facto* active-duty officer and then to say he is not entitled to the remainder because he was not entitled to active-duty pay. Hence we conclude plaintiff is not only entitled to retain the money paid him, but is entitled to be paid during the period he was in the hospital under orders, for which he was not paid; *i. e.,* April 1, 1952 to April 23, 1952, when he was notified by the Air Force that he was not on active duty. At this point it naturally follows that defendant cannot recover on the counterclaim and the same is dismissed.

The next and final question is whether plaintiff is entitled to disability retirement pay.

The short answer to this question is, plaintiff is not entitled to retirement pay unless he acquires an active-duty status and has been retired by the Secretary of the Air Force.

As pointed out above, plaintiff did not acquire an active-duty status and was not entitled to receive basic pay. One of the requirements of section 402(a) of the Career Compensation Act of 1949, supra, 63 Stat. at page 816, 37 U.S.C.A. § 272(a), is that the Secretary make a determination:

" * * * that a member of a Regular component of the uniformed services entitled to receive basic pay, or a member of a Reserve component of the uniformed services entitled to receive basic pay who has been called or ordered to extended active duty for a period in excess of thirty days, is unfit to perform the duties of his office, rank, grade, or rating, by reason of physical disability incurred while entitled to receive basic pay; * * *."

Therefore since plaintiff's disability, if any, was not incurred while entitled to receive basic pay, he is not eligible for retirement under the above section.

Furthermore, plaintiff has never been retired by the Air Force. As was stated by this court in Steen v. United States, Ct.Cl., 141 F.Supp. 946, 948, "Without the Secretary's approval of a finding that the plaintiff is incapacitated, he is not entitled to retired pay."

In addition thereto, as this court held in the cases of Wales v. United States, 130 F.Supp. 900, 132 Ct.Cl. 765; Holliday v. United States, 128 Ct.Cl. 647; Beamish v. United States, 128 F.Supp. 158, 130 Ct.Cl. 767, we cannot undertake to determine who is fit or unfit to serve in the military forces. The last action taken by the Air Force was that of the Physical Review Board, which after considering all the evidence which was before the Physical Evaluation Board, found plaintiff's disability was only 10 percent and that such disability was the natural progression of a disease which existed prior to December 6, 1951, and which had not been aggravated by any happenings since that date. The Physical Disability Appeal Board refused to take any further action because the Judge Advocate General of the Air Force ruled plaintiff had not attained an active-duty status. Furthermore, plaintiff still is commissioned in the Air Force. In this posture plaintiff cannot recover disability retired pay.

It is, therefore, concluded that plaintiff is entitled to retain the pay and allowances already paid him as a first lieutenant from December 6, 1951, when he was ordered to active duty, to April 1, 1952, and defendant is not entitled to recover on its counterclaim. Further, plaintiff is entitled to recover as a *de facto* active-duty officer from April 1, 1952, to April 23, 1952, when he was notified by the Air Force that he was not on active duty. It is further concluded that plaintiff is not entitled to disability retirement pay as petitioned for.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

**LA SOCIETE NATIONALE DE CONSTRUCTION**

v.

**The UNITED STATES.**

No. 606–52.

United States Court of Claims.
March 6, 1957.

