Davts,
 
 Judge,
 

 delivered the opinion of the court:
 

 In
 
 Beckham
 
 v.
 
 United States,
 
 179 Ct. Cl. 539, 375 F. 2d 782,
 
 petition for writ of certiorari dismissed by stipulation,
 
 389 U.S. 1011 (1967) ,
 
 [1]
 
 we rejected the
 
 Government’s revived
 
 contention that, in reviewing service decisions on military disability-retirement pay, this court must limit its consideration to the administrative record and may not take account of any
 
 de novo
 
 evidence. The defendant has again raised the issue. We take the occasion to reaffirm and elaborate the views we expressed in
 
 Beckham.
 

 Plaintiff was retired from the Army for years of service. Though he allegedly requested, prior to retirement, that he be evaluated for service-comiected physical disability, he has never appeared before a Physical Evaluation Board. His two applications for relief to the Army Board for the Correction of Military Records were denied, without a hearing, in summary statements of rejection.
 
 [2]
 
 The administrative record consists of Army records and the written materials which
 
 *503
 
 plaintiff furnished to the Correction Board in asking for a hearing. After this suit was filed and the case referred to the trial commissioner, the defendant filed a motion to preclude the introduction of
 
 de novo
 
 evidence, which the commissioner denied on the authority of
 
 Bechham.
 
 The Government requests review of that ruling.
 

 The customary rationale of the limited scope of judicial review of agency determinations is that deference should be accorded the judgment of an administrative decision-maker, either because the legislature granted it a measure of discretion on facts or policy, or because of the agency’s expertise in handling the subject matter. Most often, this leads to confining court intervention to instances in which the administrative decision was arbitrary and capricious, inconsistent with applicable statutes or regulations, or unsupported by substantial evidence.
 
 E.g.,
 
 K. Davis, AdmiNistrative Law Treatise § 29.01 (1958).
 

 Since Congress has vested the Service Secretaries (acting on the recommendation of the various physical disability
 
 [3]
 
 and correction boards) with such discretion in determining eligibility for disability-retired pay, we have always adhered to that scope of review.
 
 [4]
 
 We have also, since we first began dealing with disability retirement two decades ago, regularly considered evidence over and above that presented before the administrative boards if a party wishes to offer it. See Appendix, infra, for a list of cases which is not exhaustive. This practice has prevailed over the years, with only sporadic objection and with no real deviation by the court.
 
 [5]
 
 This coupling of the substantial-evidence standard
 
 *504
 
 with the acceptance of new evidence has not, in the view we have expressed, encroached on the administrative process. As we put it in Beckham, 179 Ct. Cl. at 543-44, 375 F. 2d at 785:
 

 In reviewing [Correction] Board decisions [or decisions of the other boards] this court has not substituted its judgment for that of the Board. Only where the decision of the Board is arbitrary, capricious, or unsupported by substantial evidence has this court interfered with the findings of the Board. * * * [W]e ask if the decision meets the test when compared with all available evidence — that is both the [administrative] record and the
 
 de novo
 
 evidence.
 

 I.
 

 The Government’s main position is that this ingrained procedure in the military disability-retirement field is proved wrong by the Supreme Court’s ruling in
 
 United States
 
 v.
 
 Carlo Bianchi & Co.,
 
 373 U.S. 709 (1963), that we cannot take new evidence in contract disputes controlled by the Wunderlich Act, 41 U.S.C. §§321-22 (1964). The Court’s holding, however, was based explicitly on the particular wording, purpose, and legislative history of that statute, which showed that
 
 Congress
 
 intended to change our pre
 
 *505
 
 existing mode of deciding those contract cases.
 
 [6]
 
 No rigid, inexorable principles of judicial review were announced or sought to be established. The opinion opens with the statement that “this case involves the interpretation and application of the ‘Wunderlich Act’” (373 U.S. at 709), and throughout is carefully restricted to “a suit governed by this statute” (373 U.S. at 710). The Court goes on to construe the specific words Congress used in providing for court scrutiny of contract-board determinations, against the particular legislative history and background of the statutory proposal. The result turned on the Court’s evaluation of that special combination.
 

 The problem now before us is quite different. The Wunder-lich Act, of course, has no application to disability-retirement cases. And the statutes granting disability-retirement pay (10 U.S.C. §§1201, 1204, 1210, 1215, 1401 (1964)) and authorizing the creation of the disability-retirement boards (10 U.S.C. §§1214, 1216, 1554 (1964)) and Correction Boards (10 U.S.C. §1552 (1964)) do not refer to judicial review, much less to the procedure to be used on review.
 
 [7]
 
 Nor is there any other indication that Congress, at any time, intended to restrict our consideration to the evidence before the administrative bodies. The issue cannot be resolved by searching for an actual legislative intention.
 

 The Government recognizes this, but says that nevertheless
 
 Bianchi
 
 lays down the overriding doctrine that, whenever an agency determination is to be tested by the standard of arbitrariness and substantial evidence, the administrative record cannot be augmented. But the Court’s statement that the substantial-evidence test “goes to the reasonableness of what the agency did
 
 on the basis of the evidence before
 
 it”
 
 *506
 
 (373 U.S. at 715 (original emphasis)) was not, in our estimation, intended to imply that
 
 de novo
 
 evidence is necessarily incompatible with a proper application of that standard. The Court was merely observing that the “customary meaning” of the language in the Wunderlich Act (“capricious”, “arbitrary”, “not supported by substantial evidence”) is review on the administrative record. 373 U.S. at 715. Using this together with the revealing legislative history, it concluded that Congress affirmatively intended to adopt this “customary meaning” in that piece of legislation. It does not follow that review on the administrative record alone is the sole possibility in every type of case, no matter how different the pertinent factors or the background.
 

 Though judicial review limited to the evidence adduced before the agency is the usual practice, there are exceptions, comparable to our own, in which the courts have deferred to the decisions and findings of an administrator while allowing the parties to introduce evidence that may or may not have been presented at the administrative level. The most common in the federal system are civil actions to obtain patents or to contest a Patent Office interference determination,
 
 [8]
 
 and tax suits, the latter including cases in which
 
 de novo
 
 evidence is offered to prove that the Commissioner of Internal Kevenue abused discretion specifically delegated to him, as well as cases in which the taxpayer seeks to overcome the general presumption running in favor of the Revenue Service’s assessments.
 
 [9]
 

 In other fields, a number of courts adhering to a standard of judicial review similar to that we apply in disability-
 
 *507
 
 retirement cases have utilized extra-administrative record evidence. See,
 
 e.g., Jordan
 
 v.
 
 United Ins. Co. of America,
 
 289 F. 2d 778 (C.A.D.C. 1961). Sometimes discretion is left with, the trier to admit it when the administrative record is incomplete or when required by the ends of justice.
 
 [10]
 
 On other occasions,
 
 de novo
 
 evidence has been accepted, apparently as a matter of course, by courts cautioning, in language paralleling Beckham, that the evidence does not license a court to “try the matter in controversy de novo and substitute its own findings” for those of the administrator.
 
 State
 
 v.
 
 Northern Pac. Ry.,
 
 39 N.W. 2d 752, 757 (Minn. 1949).
 
 [11]
 
 A recent example of full
 
 de novo
 
 review is the Bank Merger Act of 1966, 12 U.S.C. § 1828 (1964 Supp. II), dealing with approvals by the Comptroller of the Currency of bank mergers. The Supreme Court has held, on the basis of the Act and its individual background, that the reviewing court is entirely free.
 
 United States
 
 v.
 
 First City Nat'l Bank of Houston,
 
 386 U.S. 361, 366-70 (1967).
 

 We cite these instances not as controlling precedents but to indicate that the question of allowing
 
 d& novo
 
 evidence in a particular kind of case — especially where, as here, the statute is silent — is to be determined by an evaluation of the individual factors converging on the problem of review in that specific kind of suit. See L. Jaffe, judicial coNtbol of admiNxsteative action 619-23 (1965). If Congress has not spoken, there is no mechanical or reflex solution. The result should depend, not on the quotation of a broad general rule, but on the insight gained from a hard look at the judi
 
 *508
 
 cial function vis-a-vis tbe administrative role in tbat particular category of case.
 
 [12]
 

 II.
 

 The initial decision on a serviceman’s entitlement to disability retired pay is theoretically made by tbe Secretary of Army (or other Service).
 
 E.g., Heins
 
 v.
 
 United States,
 
 137 Ct. Cl. 658, 666, 149 F. Supp. 331, 335 (1957);
 
 Steen
 
 v.
 
 United States,
 
 136 Ct. Cl. 142, 143-44, 141 F. Supp. 946, 947 (1956).
 
 [13]
 
 However, Congress has authorized, and tbe Secretaries have created, two separate groups of administrative bodies competent to recommend action, and our review is generally directed toward their suggestions. On tbe one hand, a claimant, normally prior to separation, may appear, if he is permitted, before a Physical Evaluation Board (formerly Retiring Boards), with the possibility of appeal to the Physical Review Council and the Physical Disability Appeal Board. On the other, he may — like the present plaintiff— apply to the Correction Board, requesting that his records be changed to show retirement for physical disability. These avenues of relief are alternative and cumulative, in that a claimant need only follow one route, not both, as a precondition to suit in court, but may also pursue both.
 
 E.g., Friedman
 
 v.
 
 United States,
 
 159 Ct. Cl. 1, 13-19, 310 F. 2d 381, 388-92 (1962),
 
 cert. denied,
 
 373 U.S. 932 (1963).
 

 The nature of the administrative record varies with the
 
 *509
 
 process the claimant receives. He is not guaranteed a hearing. While 10 U.S.C. § 1214 (1964) mandates a “full and fair” hearing for a member of the armed services before separation for physical disability, he may be (and often is) separated for reasons other than disability
 
 (e.g.,
 
 longevity) without a hearing even though he believes he is entitled to disability-retirement pay. See
 
 Wales
 
 v.
 
 United States,
 
 132 Ct. Cl. 765, 770, 130 F. Supp. 900, 903 (1955). His appearance before a Physical Evaluation Board (PEB) rests upon the recommendation of a medical board and the decision of his commanding officer Or the hospital commander. See Army Begs. 635-40A ¶ 9 and 635-40B ¶¶ 5-6. Permission is frequently denied.
 

 The void is not filled by the Correction Board, whose regulations specifically authorize denial of applications without formal hearing (32 C.F.R. § 581.3 (c) (5) (1968)), and which need not be resorted to at all if a Physical Evaluation Board hearing was previously refused. As in the present case, the frequent result is that the only real hearing available in a disability retirement case is a ‘judicial hearing.
 
 [14]
 
 In those cases the administrative record consists, as here, simply of the official military records plus the written materials
 
 (e.g.,
 
 medical statements, post-discharge medical records, etc.) the claimant has seen fit to furnish in connection with his request for relief by the Physical Evaluation or Correction Board. There is no oral testimony, no examination of witnesses or cross-examination, and, aside from official records, a minimal presentation of the case against allowance of disability retirement pay. The administrative “findings” are formal and summary, indicating no more than that relief is not warranted. See note 2
 
 supra.
 

 If the serviceman is granted a hearing by one or another board, he does have the right to offer evidence and to probe the evidence, such as it is. See 32 C.F.B. §§ 581.3 (d)-(e)
 
 *510
 
 (1968); Army Regs. 635-40A ¶¶16; 22, and 635-40B ¶¶16 (a), 18, 20, 24, 27. But the service need not produce live witnesses ; it can, and most often does, rely on records and written statements and materials. In fact, no provision is made for a representative of the service to oppose the claim. Instead the boards themselves call for and examine evidence. At the Physical Evaluation Board level, a recorder is appointed to “make a full and impartial presentation” of the evidence (Army Reg. 635-40A ¶ 15), and both the Correction Board and Physical Review Council have authority to request advisory opinions from other service officials, including The Surgeon General (32 C.F.R. § 581.3 (f), (h) (1968); Army Reg. 15-160 ¶ 8; see,
 
 e.g., Wood
 
 v.
 
 United
 
 States, 176 Ct. Cl. 737 (1966)). In some instances, the claimant first sees these advisory opinions when he brings his suit here.
 
 [15]
 

 As this recital shows, the most important operational characteristic of both the Correction Board and the Physical Evaluation Board (as well as the latter’s appellate bodies) is that their function is to
 
 investigate
 
 the possibility that a serviceman is suffering from a service-connected disability. They do not sit as tribunals adjudicating disputes between adverse parties, and they do not have the procedures of such tribunals. The Supreme Court observed, in connection with the Army Disability Review Board, that the hearings provided “are not contests; they are inquiries concerning disability. The purpose is to get at the truth of the matter.”
 
 Robertson
 
 v. Chambers, 341 U.S. 37, 39 (1951); accord,
 
 e.g., Hoppock
 
 v.
 
 United States,
 
 176 Ct. Cl. 1147, 1162-64 (1966) ;
 
 Powers
 
 v.
 
 United States,
 
 176 Ct. Cl. 388, 399 n. 9 (1966); Army Regs. 635-40A ¶ 20 and 635-40B ¶ 16(c) (“The procedure of a physical evaluation board will be similar to that used before boards of inquiry * * *.”).
 

 Consistent with the investigatory nature of the administrative function is the Correction Board’s practice of accepting
 
 *511
 

 de novo
 
 evidence (or written materials) even though, the applicant was accorded a full hearing before a Physical Evaluation Board (PEB). See,
 
 e.g., Davis
 
 v.
 
 United States,
 
 181 Ct. Cl. 1095 (1967). This procedure is not only authorized but necessary for the just disposition of many cases since it is sometimes impossible to diagnose accurately the existence, extent, or nature of a disability on the basis of facts known at the time of separation (which is usually the time a PEB convenes). See,
 
 e.g., Walters
 
 v.
 
 United States,
 
 175 Ct. Cl. 215, 224-25, 358 F. 2d 957, 962 (1966). Where the claimant by-passes the Correction Board and comes directly to this court from a decision of the PEB (and the direct appellate boards), or from a denial to him of a PEB, there is no one to perform this function except the court.
 

 It is also a significant factor (see Part III
 
 infra)
 
 that the Secretary of the Army has chosen to exercise the broad range of discretion that Congress gave him by promulgating specific substantive regulations. See Army Regs. 635-40C and 40-501 ch. 3.
 
 [16]
 
 In addition, both the Secretary and the boards are now bound by statute to follow the detailed guidelines of the Veterans’ Administration’s disability code when determining the percentage of disability under the Career Compensation Act. See 10 U.S.C. §§1201, 1203-04, 1206 (1964). Consequently, the boards have little latitude for developing general retirement policies in individual cases. Their job is to pass upon a particular case under the standards handed down to them.
 

 III.
 

 The character of the administrative process in military disability-retirement cases, as we have just Outlined it, strongly suggests the propriety of our established practice of accepting
 
 de novo
 
 evidence in this area. On the one hand, the administrative system, as a whole, is not designed to collect and evaluate for itself all the evidence bearing on the issue of
 
 *512
 
 disability, nor is it geared to produce records comparable to those of the regulatory agencies. There is, in short, less need and less warrant for deferring to the administrative fact-finding process, as all-inclusive, self-contained, and final. On the other hand, the administrative system is such that court intervention, by way of the augmentation of evidence, will interfere much less with the carrying on of this administrative function than is true for many other administrative bodies.
 

 First, as to the fact-finding process and the records. We have pointed out that normally the records do not reflect adversary hearings, with the testing and evaluation typical of that kind of process. In many, possibly most, of the cases coming here no administrative hearing was held at all, and the administrative record, as in this case, is simply a miscellaneous collection of materials presented by the claimant and, to a much less extent, by the service. The actual, as well as the potential, lacunae need not be elaborated. The evidence we have considered to fill these gaps has been, in the vast majority of instances, expert medical testimony.
 
 [17]
 
 We have also accepted evidence for the purpose of filling in the post-separation medical, social, and economic history of the plaintiff,
 
 [18]
 
 of explaining omissions in the plaintiff’s medical records,
 
 [19]
 
 and of detecting latent irregularities in the administrative proceedings.
 
 [20]
 
 This evidence has proved invaluable in fully understanding and evaluating the basis — or lack of basis — for the administrative decision.
 

 
 *513
 
 It is plain, we believe, that non-adversary records of the kind we have in this case and which come before us in a large segment of these cases cannot form the sole basis for a judicial decision. They are too infirm and incomplete. Our remedy, for about a generation, has been to permit the parties to augment the evidence, and then for us to apply the customary standards of review to the entire record. As shown in Part I
 
 supra,
 
 though that is not the usual method of scrutinizing administrative decisions, it is by no means unique, especially for non-adversary records of this kind. See
 
 Jordan
 
 v.
 
 United Ins. Co. of America, supra,
 
 289 F. 2d 778. Since this court has trial powers within its jurisdiction, that obstacle to adoption of the remedy of receiving evidence is eliminated.
 
 Ibid.
 

 Two other solutions can be suggested for the difficulties created by the administrative scheme, but we think that neither of these proposals is as appropriate as the course we have followed; at the least, they are not so convincing as to press us at this stage to change our long-established practice. Possibly we could say that, where there has been a full-scale administrative hearing,
 
 [21]
 
 we will not receive
 
 de novo
 
 evidence, reserving that procedure for instances, like this, in which an administrative hearing was not held. This remedy would have the unsatisfactory sequel of requiring us, in each case, to evaluate the record preliminarily in order to decide whether in fact a full-scale hearing was held. Since the various administrative records in this field run the gamut, there would be considerable opportunity for dispute and the parties would no doubt disagree often on that initial issue. We would thus be faced, at the outset, with deciding a burdensome and time-consuming threshold controversy before the case could even begin to be considered on its merits.
 

 Moreover, as we noted in Part II
 
 supra,
 
 the Correction Board can and does accept additional evidence not offered to the Physical Evaluation Board (or its appellate tribunals) even where a full hearing has already been had before those bodies. In cases coming here directly from the PEB (or the disability review boards), without going to the Correction
 
 *514
 
 Board, only this court can perform the function of taking account of new evidence. If we refuse to do so and decide only on the administrative record, the claimant is put at a disadvantage. In any event, we have the problem that in this field even the “full” hearings are ordinarily not trial-type since written statements are often considered and their authors not subject to examination. It might well be that many records of this kind could not be accepted as adequate. See Part IV
 
 infra.
 

 Alternatively, it would be possible, where a proper hearing was not held, to suspend proceedings and allow the plaintiff to return to the Army for such a hearing if we thought one should have been had. This course would raise the same obstacle of compelling us to make a preliminary determination in a large number of cases. We have pointed out that, unlike the contract “dispute” cases, many disability-retirement cases come to us without any hearing; the problem of a preliminary examination would be routine, not exceptional (as it is for contract cases). Then, if a case were sent back the claimant could face difficulties due to the
 
 ad hoc
 
 nature of the Physical Evaluation Boards,
 
 [22]
 
 and, at any rate, the hearing afforded would not be adversary, with the right to cross-examine all opposing witnesses (because of the acceptance of written statements and consideration of untested communications within the service) —as is now normal for the regulatory agencies and the boards of contract appeals.
 
 [23]
 

 Our established practice is also supported, and the case for
 
 *515
 
 the substitute remedies weakened, by the difference in impact of the receipt of
 
 de novo
 
 evidence on the functioning of these service boards, as contrasted to better known administrative bodies (the regulatory agencies and the contract appeal boards). Here, as we have stressed, we deal, not with adversary process, but with continuing administrative “inquiries” designed “to get at the truth of the matter.” The Correction Board, for example, receives new evidence despite a full hearing before a PEB. This investigatory, nonadversary format means that it is less wrenching for a court to augment the evidence than it would be for truly contested proceedings where the administrative tribunal cannot fulfill its dispute-settling function unless the parties are forced to raise and settle all issues before it. This was a problem, in Congress’s eyes, with the procedures for disposing of Government contract disputes before the “Wunderlich Act. See
 
 United States
 
 v.
 
 Carlo Bianchi
 
 &
 
 Co.,
 
 supra, 373 U.S. at 716-17. We have no basis in experience for concluding that disability-retirement applicants likewise withhold evidence from the administrative boards with the view of introducing it in court, and we see no reason to suppose that they do. In any event, the administrative system itself countenances the repeated enlargement of evidence.
 
 [24]
 
 Should it become clear in a particular case that a claimant has held back evidence in order to offer it in court, the obvious and simple remedy is to exclude it.
 
 Cf. California Research Corp.
 
 v. Ladd, 356 F. 2d 813, 820 n. 18 (C.A.D.C. 1966) ;
 
 Globe-Union, Inc.
 
 v.
 
 Chicago Tel. Supply Co.,
 
 103 F. 2d 722, 728 (C.A. 7, 1939);
 
 Dare
 
 v.
 
 Board of Medical Examiners,
 
 136 P. 2d 304, 309 (Cal. 1943).
 

 Similarly, the possibility of duplication of evidence is less than in the other types of administrative review. Ordinarily in these cases the court evidence has not been presented previously at all, or not in testimonial form subject to cross-examination. It is not our feeling that there has, in fact, been much actual duplication. Bather, the
 
 de novo
 
 evidence has generally been new to the case, not merely to the court. At
 
 *516
 
 present, if the parties in this court have nothing new to add, they normally both rest on the administrative record. If that is not done and the Government believes that a
 
 de novo
 
 trial will truly be a duplication of a prior hearing, it can move for summary judgment on the administrative record, suggesting that the claimant proposes to offer nothing new. If that is so, we are and would be hospitable to a disposition of the case on the existing record. Duplication of hearings is being, and can be, avoided without excluding evidence which is far from repetitive.
 

 A separate, though related, reason for thinking that
 
 de novo
 
 evidence in this corner of the law is not harmful to the administrative process, as it is in other fields, is that these military boards do not set policy but make their determinations within narrow bounds. Kegulatory agencies frequently exercise their discretion by formulating broad policies in individual cases. Cf.
 
 Securities & Exchange Comm’n
 
 v.
 
 New England Elec. Sys.,
 
 390 U.S. 207 (1968). The Supreme Court, anxious that a trial court might fail to understand the policy implications of
 
 de novo
 
 evidence and reach an unsound decision or destroy the uniformity so important in regulatory schemes, has in that sector concluded that fact-gathering ought to be left entirely in the hands of the agencies. See
 
 New York
 
 v.
 
 United
 
 States, 331 U.S. 284, 334-36 (1947). Compare
 
 Tagg Bros. & Moorhead
 
 v.
 
 United
 
 States, 280 U.S. 420, 443-45 (1930), with
 
 Interstate Commerce Comm'n
 
 v.
 
 Atlantic Coast Line
 
 R.R., 383 U.S. 576, 589-95
 
 &
 
 n. 6, 600-02 (1966), and
 
 United States
 
 v. Jones, 336 U.S. 641, 651-53 (1949). In sharp contrast to the Court’s reluctance to permit
 
 de novo
 
 evidence in those cases was its willingness in
 
 United States
 
 v.
 
 First City Nat'l Bank of Houston, supra,
 
 386 U.S. at 369, to sanction
 
 de novo
 
 evidence — as well as a
 
 de novo
 
 inquiry — where the courts, because of their extensive antitrust experience, were “not left at large as planning agencies.”
 

 As indicated in Part II
 
 supra,
 
 the administrative regulations make it unlikely that an individual case will be the springboard for a major policy pronouncement, and compliance with these regulations ensures uniformity of treatment.
 
 *517
 
 When we review a particular board decision the regulations usually control what conclusion must be drawn from any new evidence produced at trial. The chances are slim that we will have to assess the implications of that evidence for other disability cases. This aspect of disability-retirement cases “minimize[s] the opportunity for reviewing courts to substitute their discretion for that of the agency”
 
 (Consolo
 
 v.
 
 Federal Maritime Comm'n,
 
 383 U.S. 607, 621 (1966)) and reduces the risk that our mode of review will short-circuit functions properly within the administrative sphere.
 

 IV.
 

 These are the reasons sustaining our consistent practice of not barring
 
 de novo
 
 evidence in military disability-retirement cases. They are reasons bolted to the particular machinery of this administrative operation. We think that the usage has worked well for two decades, without harm to the interests of claimants or of the Government. It has given due deference to the administrative decision, through the standard of review we have applied, without scanting the claimant’s procedural rights or the defendant’s opportunity to explain and support the board ruling.
 

 We could, we suppose, have taken the other road when we first began to get these cases in the 1940’s. If we had, the course of our rulings — given the nature of the administrative records and of the particular administrative process — would probably have pressed the services to afford fuller, adversary, more trial-type hearings,
 
 [25]
 
 and in a larger proportion of the cases, and also to prepare more extensive opinions and factual findings. Cf.
 
 Lloyd Sabaudo Societa Anonima per Azioni
 
 v. Elting, 287 U.S. 329, 339 (1932);
 
 Smith
 
 v.
 
 United States,
 
 
 *518
 
 168 Ct. Cl. 545, 553-54 (1964). Instead, we have accepted the method the services have chosen to use as within their statutory authority — and we remain of that view since Congress has not required another type of proceeding — and have closed the procedural gaps by permitting additional evidence where appropriate. That course we think Congress has left open to us by not providing a specific method of review (or limiting review) for these cases, and we do not read the Supreme Court’s decisions as compelling a shift. At least without radical changes in the services’ procedures, we see no need and no adequate ground for altering this long-continued practice.
 

 The trial commissioner’s order denying the defendant’s motion to preclude
 
 de novo
 
 evidence is affirmed, and the case is remanded to the commissioner for further proceedings.
 

 APPENDIX
 

 Military Disability Retirement Oases In Which De Novo Evidence Has Olearly Been Admitted
 

 Russell
 
 v.
 
 United States,
 
 183 Ct. Cl. 802 (1968) ;
 
 Davis
 
 v.
 
 United States,
 
 181 Ct. Cl. 1095
 
 (1967); Reese
 
 v.
 
 United
 
 States, 180 Ct. Cl. 932 (1967);
 
 Dayley
 
 v.
 
 United States,
 
 180 Ct. Cl. 1136 (1967);
 
 Brozik
 
 v.
 
 United
 
 States, 180 Ct. Cl. 546 (1967);
 
 Beckham
 
 v.
 
 United States,
 
 179 Ct. Cl. 539, 375 F. 2d 782,
 
 petition for writ of certiorari dismissed by
 
 stipulation, 389 U.S. 1011 (1967);
 
 Cooper
 
 v.
 
 United
 
 States, 178 Ct. Cl. 277 (1967);
 
 Harris
 
 v.
 
 United States,
 
 177 Ct. Cl. 538 (1966);
 
 Imhoff
 
 v.
 
 United
 
 States, 177 Ct. Cl. 1 (1966),
 
 cert.
 
 denied, 389 U.S. 844 (1967);
 
 Hoppock
 
 v.
 
 United States,
 
 176 Ct. Cl. 1147 (1966);
 
 Wood
 
 v.
 
 United
 
 States, 176 Ct. Cl. 737 (1966);
 
 Powers
 
 v.
 
 United
 
 States, 176 Ct. Cl. 388 (1966);
 
 Hoffman
 
 v.
 
 United States,
 
 175 Ct. Cl. 457 (1966);
 
 Walters
 
 v.
 
 United
 
 States, 175 Ct. Cl. 215, 358 F. 2d 957 (1966);
 
 Farrar
 
 v.
 
 United States,
 
 173 Ct. Cl. 1008, 358 F. 2d 965 (1965);
 
 Merson
 
 v.
 
 United States,
 
 173 Ct. Cl. 92 (1965),
 
 remanded to commissioner for additional findings,
 
 173 Ct. Cl. 139 (1966);
 
 Kingsley
 
 v.
 
 United States,
 
 172 Ct. Cl. 549
 
 *519
 
 (1965);
 
 Hutter
 
 v.
 
 United States,
 
 170 Ct. Cl. 517, 345 F. 2d 828 (1965);
 
 Kurfess
 
 v.
 
 United States,
 
 169 Ct. Cl. 486 (1965);
 
 Boland
 
 v.
 
 United States,
 
 169 Ct. Cl. 145 (1965);
 
 Smith
 
 v.
 
 United States,
 
 168 Ct. Cl. 545 (1964);
 
 Woodard
 
 v.
 
 United States,
 
 167 Ct. Cl. 306 (1964);
 
 Benins
 
 v.
 
 United States,
 
 166 Ct. Cl. 547 (1964);
 
 Ferguson
 
 v.
 
 United States,
 
 166 Ct. Cl. 310 (1964);
 
 Grubin
 
 v.
 
 United States,
 
 166 Ct. Cl. 272, 333 F. 2d 861 (1964);
 
 Patten
 
 v.
 
 United States,
 
 161 Ct. Cl. 131 (1963);
 
 Dickson
 
 v.
 
 United States,
 
 159 Ct. Cl. 185 (1962);
 
 Rae
 
 v.
 
 United States,
 
 159 Ct. Cl. 160 (1962);
 
 Harper
 
 v.
 
 United States,
 
 159 Ct. Cl. 135, 310 F. 2d 405 (1962);
 
 Nichols
 
 v.
 
 United States,
 
 158 Ct. Cl. 412 (1962);
 
 McAulay
 
 v.
 
 United States,
 
 158 Ct. Cl. 359, 305 F. 2d 836 (1962),
 
 cert. denied,
 
 373 U.S. 938 (1963) ;
 
 Hoen
 
 v.
 
 United States,
 
 157 Ct. Cl. 235 (1962);
 
 Lipp
 
 v.
 
 United States,
 
 157 Ct. Cl. 197, 301 F. 2d 674 (1962),
 
 cert. denied,
 
 373 U.S. 932 (1963);
 
 Salz
 
 v.
 
 United States,
 
 157 Ct. Cl. 172 (1962);
 
 Adams
 
 v.
 
 United States,
 
 156 Ct. Cl. 289 (1962);
 
 Frith
 
 v.
 
 United States,
 
 156 Ct. Cl. 188 (1962) ;
 
 Thompson
 
 v.
 
 United States,
 
 156 Ct. Cl. 158 (1962);
 
 Ludzinski
 
 v.
 
 United States,
 
 154 Ct. Cl. 215 (1961);
 
 Furlong
 
 v.
 
 United States,
 
 153 Ct. Cl. 557 (1961);
 
 Watson
 
 v.
 
 United States,
 
 152 Ct. Cl. 273 (1961) ;
 
 Hendrick
 
 v.
 
 United States,
 
 150 Ct. Cl. 437 (1960);
 
 Weiner
 
 v.
 
 United States,
 
 148 Ct. Cl. 445 (1960);
 
 Siegel
 
 v.
 
 United States,
 
 148 Ct. Cl. 420 (1960);
 
 Allin
 
 v.
 
 United States,
 
 147 Ct. Cl. 459 (1959);
 
 Brown
 
 v.
 
 United States,
 
 143 Ct. Cl. 605 (1958);
 
 Bowman
 
 v.
 
 United States,
 
 142 Ct. Cl. 367 (1958);
 
 Friedman
 
 v.
 
 United States,
 
 141 Ct. Cl. 239, 158 F. Supp. 364 (1958);
 
 San Millan
 
 v.
 
 United States,
 
 139 Ct. Cl. 485, 153 F. Supp. 370 (1957);
 
 Furlong
 
 v.
 
 United States,
 
 138 Ct. Cl. 843, 152 F. Supp. 238 (1957);
 
 Uhley
 
 v.
 
 United States,
 
 137 Ct. Cl. 275, 147 F. Supp. 497 (1957);
 
 Griffith v. United States,
 
 135 Ct. Cl. 278 (1956);
 
 Thompson
 
 v.
 
 United States,
 
 134 Ct. Cl. 646, 139 F. Supp. 935 (1956);
 
 Loth
 
 v.
 
 United States,
 
 133 Ct. Cl. 476, 137 F. Supp. 414 (1956) ;
 
 Lemly
 
 v.
 
 United States,
 
 117 Ct. Cl. 365, 91 F. Supp. 743 (1950);
 
 Ancker
 
 v.
 
 United States,
 
 116 Ct. Cl. 384 (1950);
 
 Cook
 
 v.
 
 United States,
 
 101 Ct. Cl. 782 (1944).
 

 [1]
 

 After the Government’s petition for certiorari was filed, the plaintiff re-guested that our order remanding the case to the trial commissioner be withdrawn and that the case be decided solely on the administrative record. An order to this effect was entered in November 1967, and shortly thereafter the parties stipulated the dismissal of the petition for certiorari under Sup. Ct. Rule 60, 389 U.S. 1011. Subsequently, we held, on the basis of the evidence before the Physical Evaluation Board and the Correction Board, that the denial of retirement pay was arbitrary and without the support of substantial evidence.
 
 Beckham
 
 v.
 
 United States,
 
 183 Ct. Cl. 628, 392 F. 2d 619 (1968).
 

 [2]
 

 The Correction Board simply informed plaintiff that insufficient evidence had been presented to indicate probable material error or injustice, and that no material evidence of error or injustice was shown to warrant granting a formal hearing. This is the usual form when a hearing is denied.
 

 [3]
 

 These include the Physical Evaluation (formerly Retiring) Boards, Physical Review Councils, and Physical Disability Review or Appeal Boards. See generally
 
 Harris
 
 v.
 
 United States,
 
 177 Ct. Cl. 538, 544-46 (1966) ;
 
 Nichols
 
 v.
 
 United States,
 
 158 Ct. Cl. 412, 412-15 (1962).
 

 [4]
 

 E.g., Hoffman
 
 v.
 
 United States,
 
 175 Ct. Cl. 457, 459 (1966) ;
 
 Kingsley
 
 v.
 
 United States,
 
 172 Ct. Cl. 549, 554 (1965) ;
 
 Nichols
 
 v.
 
 United States,
 
 158 Ct. Cl. 412, 412-13 (1962) ;
 
 Bowman
 
 v.
 
 United States,
 
 142 Ct. Cl. 367 (1958) ;
 
 Wales
 
 v.
 
 United States,
 
 132 Ct. Cl. 765, 130 F. Supp. 900 (1955).
 

 [5]
 

 So far as we can now tell, the only cases prior to
 
 Bechham
 
 in which the Government appears to have objected generally to the admission of
 
 de novo
 
 evidence were
 
 San Millan
 
 v.
 
 United States,
 
 139 Ct. Cl. 485, 493, 153 F. Supp. 370, 374-75 (1957), and
 
 Brown
 
 v.
 
 United States,
 
 143 Ct. Cl. 605, 615-16 (1958) (plurality opinion). The court rejected the broad contention in
 
 San Millan
 
 but the opinion in
 
 Brown
 
 found it unnecessary to pass on the issue
 
 *504
 
 since tie infirmities of the Disability Review Boardis determination were adequately shown in the administrative record.
 

 The misgivings in other cases seem to have been related only to the probative value of the evidence proffered by the plaintiff. See
 
 Kingsley
 
 v.
 
 United States,
 
 172 Ct. Cl. 549, 557 (1965) ;
 
 Hutter
 
 v.
 
 United States,
 
 170 Ct. Cl. 517, 523-24, 345 F. 2d 828, 832 (1965)
 
 ; Furlong
 
 v.
 
 United States,
 
 153 Ct. Cl. 557, 566 (1961). In
 
 Kingsley
 
 and
 
 Furlong
 
 the court agreed that medical testimony based on examinations made long after separation may shed little light on a claimant’s condition at the time he entered or was discharged from the service. Further, the court cautioned in
 
 Sam, Millan
 
 that all medical testimony must be weighed in view of “the nature of the ailment, the facts and circumstances of the case, and the bases on which the opinions were given.” 139 Ct. Cl. at 494, 153 F. Supp. at 375.
 

 The defendant also relies on
 
 Towell
 
 v.
 
 United States,
 
 150 Ct. Cl. 422, 434 (1960) (“Since it is the action of the Correction Board in denying plaintiff’s application, upon which he seeks relief here, we look to the record before said Board in order to determine whether its conclusions were supported by substantial evidence.”), but that was a case in which both parties moved in this court for summary judgment on the basis of the administrative record and neither wished to present additional evidence; naturally, in that situation, the court would look to the record before the Correction Board.
 

 [6]
 

 National Broadcasting Co.
 
 v.
 
 United States,
 
 319 U.S. 190, 227 (1943),
 
 affirming
 
 47 F. Supp. 940 (S.D.N.Y. 1942), was also based on an implication of Congressional intent from a specific judicial-review provision. See 47 F. Supp. at 946-47.
 

 [7]
 

 See
 
 Friedman
 
 v.
 
 United States,
 
 159 Ct. Cl. 1, 26, 37-40, 310 F. 2d 381, 396-97, 403-05 (1962),
 
 cert. denied,
 
 373 U.S. 932 (1963) ;
 
 San Millan
 
 v.
 
 United States,
 
 139 Ct. Cl. 485, 487-88, 153 F. Supp. 370, 371 (1957) ;
 
 Carlin
 
 v.
 
 United States,
 
 121 Ct. Cl. 643, 660-61, 100 F. Supp. 451, 453-54 (1951);
 
 Lemly
 
 v.
 
 United States,
 
 109 Ct. Cl. 760, 761-63, 75 F. Supp. 248, 250-51 (1948). See generally Meador,
 
 Judicial Review in Military Disability Retirement Cases,
 
 33 Military L. Rev. 1 (1966).
 

 [8]
 

 See,
 
 e.g., California Research Corp.
 
 v.
 
 Ladd,
 
 356 F. 2d 813 (C.A.D.C. 1966) ;
 
 Reynolds
 
 v.
 
 Aghnides,
 
 356 F. 2d 367 (C.A.D.C. 1966), and cases cited;
 
 United States
 
 v.
 
 Szuecs,
 
 240 P. 2d 886, 887 (C.A.D.C. 1957).
 

 An applicant for a patent or both parties to an interference may waive the right to a civil action and appeal to tbe Court of Customs and Patent Appeals. See 35 U.S.C. § 141 (1964). That court bears and determines the appeal “on tbe evidence produced before tbe Patent Office.” 35 U.S.C. § 144 (1964).
 

 [9]
 

 See,
 
 e.g., Helvering
 
 v.
 
 Taylor,
 
 293 U.S. 507 (1935) ;
 
 Northlich, Stolley, Inc.
 
 v.
 
 United States,
 
 177 Ct. Cl. 435, 442, 368 F. 2d 272, 277 (1966) ;
 
 International Business Machines Corp.
 
 v.
 
 United States,
 
 170 Ct. Cl. 357, 367 ff., 343 P. 2d 914, 920
 
 ff.
 
 (1965),
 
 cert. denied,
 
 382 U.S. 1028 (1966) ;
 
 Toledano
 
 v.
 
 Commissioner,
 
 362 P. 2d 243, 246 (C.A. 5, 1966) ;
 
 Aiken Drive-In Theatre Corp.
 
 v.
 
 United States,
 
 281 P. 2d 7, 10-11 (C.A. 4, 1960) ;
 
 Orvis
 
 v.
 
 Higgins,
 
 180 F. 2d 537, 540-41 (C.A. 2),
 
 cert. denied,
 
 340 U.S. 810 (1950).
 

 [10]
 

 See,
 
 e.g., In re Topper,
 
 165 N.E. 2d 19, 23 (Ohio Ct. App. 1959) ;
 
 Hoffmeister
 
 v.
 
 McIntosh,
 
 364 P. 2d 823 (Wyo. 1961) ;
 
 School Dist. No. 9
 
 v.
 
 District Boundary Bd.,
 
 351 P. 2d 106, 113-14 (Wyo. 1960).
 

 [11]
 

 See,
 
 e.g., Powell
 
 v.
 
 Brannan,
 
 196 F. 2d 871, 872 & n. 1 (C.A.D.C. 1952) (semble) ;
 
 Jordan
 
 v.
 
 American Eagle Fire Ins. Co.,
 
 169 F. 2d 281, 289-91 (C.A.D.C. 1948) ;
 
 Zucker
 
 v.
 
 Baer,
 
 262 F. Supp. 528, 530 (S.D.N.Y. 1967) ;
 
 Zucker
 
 v.
 
 Baer,
 
 247 F. Supp. 790, 792-93 (S.D.N.Y. 1965) ;
 
 Sulger
 
 v.
 
 Arizona Corp. Comm’n,
 
 423 P. 2d 145 (Ariz. Ct. App. 1967) ;
 
 National Mutual Cas. Co.
 
 v.
 
 Hobbs,
 
 88 P. 2d 1006 (Kan. 1939) ;
 
 Northern Pac. Ry.
 
 v.
 
 Village of Bush City,
 
 40 N.W. 2d 886 (Minn. 1950) ;
 
 Hawkins
 
 v.
 
 Texas Co.,
 
 209 S.W. 2d 338, 340 (Tex. 1948) ;
 
 Davis
 
 v.
 
 Zoning Bd. of Adjustment,
 
 362 S.W. 2d 894, 898 (Tex. Civ. App. 1962) ;
 
 City of Houston
 
 v.
 
 Melton,
 
 347 S.W. 2d 643 (Tex. Civ. App. 1961),
 
 rev’d on other grounds,
 
 354 S.W. 2d 387 (1962). See also
 
 Jordan
 
 v.
 
 Silverman,
 
 294 F. 2d 916 (C.A.D.C. 1961) (standard left open).
 

 [12]
 

 Lloyd Sabando Societa Anonima per Azioni
 
 v.
 
 Elting,
 
 287 U.S. 329, 334-35 (1932), and
 
 Kessler
 
 v.
 
 Streaker,
 
 307 U.S. 22, 34-35 (1939), Involved, to some extent, the question of
 
 de novo
 
 evidence. However, the parties apparently-desired the type of trial
 
 de novo
 
 allowed in deportation cases only on the the question of citizenship, and the Court applied the normal rule that in other immigration matters all the evidence must be presented in the proceeding before the administrator. Nothing in those opinions can be read as a general edict against the consideration of
 
 de novo
 
 evidence by a court, no matter what the type of the proceeding or subject matter.
 

 Consolo
 
 v.
 
 Federal Maritime Comm’n,
 
 383 U.S. 607, 618-20 & n. 17 (1966), is also distinguishable. The Court’s statement that
 
 “de novo
 
 review is generally not to be presumed” (383 U.S. at 619 n. 17) referred to the fact that the lower court had adopted and applied an overly broad standard of review. Since the suit was a direct-review proceeding initiated in a court of appeals, no question of
 
 de novo
 
 evidence arose. The Court was referring, we believe, to a court of appeals’ substitution of its own judgment for that of the Maritime Commission.
 

 [13]
 

 The defense that the Secretary has not made a determination must be timely and properly raised, since it is nonjurisdictional and waivable. See
 
 Russell
 
 v.
 
 United States,
 
 183 Ct. Cl. 802-11 (1968).
 

 [14]
 

 See,
 
 e.g., Wood
 
 v.
 
 United States,
 
 176 Ct. Cl. 737 (1966) ;
 
 Hoffman
 
 v.
 
 United States,
 
 175 Ct. Cl. 457 (1966) ;
 
 Farrar
 
 v.
 
 United States,
 
 173 Ct. Cl. 1008, 358 F. 2d 965 (1965) ;
 
 Hutter
 
 v.
 
 United States,
 
 170 Ct. Cl. 517, 345 F. 2d 828 (1965) ;
 
 Patten
 
 v.
 
 United States,
 
 161 Ct. Cl. 131 (1963) ;
 
 Harper
 
 v.
 
 United States,
 
 159 Ct. Cl. 135, 310 F. 2d 405 (1962) ;
 
 San Millan
 
 v.
 
 United States,
 
 139 Ct. Cl. 485, 153 F. Supp. 370 (1957).
 

 [15]
 

 See,
 
 e.g., Weiner
 
 v.
 
 United States,
 
 148 Ct. Cl. 445, 451 (1960). Tins court has never held that a board’s action is arbitrary merely because it relied on an
 
 ex parte
 
 statement from The Surgeon. General. If, however, the statement was inaccurate and the board relied on it, we have declined to uphold the denial of relief. See,
 
 e.g., Hutter
 
 v.
 
 United States,
 
 170 Ct. Cl. 517, 524-25, 345 F. 2d 828, 831-33 (1965).
 

 [16]
 

 To ensure that the regulations are as complete as possible, the Physical Review Council and the Physical Disability Appeal Board are instructed to recommend augmenting provisions to the Secretary whenever they discover that the existing regulations do not provide sufficient guidance. See Army Reg. 15-160 ¶ 3(c).
 

 [17]
 

 See,
 
 e.g., Dayley
 
 v.
 
 United States,
 
 180 Ct. Cl. 1136 (1967) ;
 
 Cooper
 
 v.
 
 United States,
 
 178 Ct. Cl. 277 (1967) ;
 
 Imhoff
 
 v.
 
 United States, 177
 
 Ct. Cl. 1 (1966),
 
 cert. denied,
 
 389 U.S. 844 (1967) ;
 
 Wood
 
 v.
 
 United States,
 
 176 Ct. Cl. 737 (1966) ;
 
 Powers
 
 v.
 
 United States,
 
 176 Ct. Cl. 388 (1966) ;
 
 Walters
 
 v.
 
 United States,
 
 175 Ct. Cl. 215, 358 F. 2d 957 (1966) ;
 
 Hutter
 
 v.
 
 United States,
 
 170 Ct. Cl. 517, 345 F. 2d 828 (1965)
 
 ; Boland
 
 v.
 
 United States,
 
 169 Ct. Cl. 145 (1965) ;
 
 Smith
 
 v.
 
 United States,
 
 168 Ct. Cl. 545 (1964) ;
 
 Nichols
 
 v.
 
 United States,
 
 158 Ct. Cl. 412 (1962) ;
 
 Adams
 
 v.
 
 United States,
 
 156 Ct. Cl. 289 (1962) ;
 
 Weiner
 
 v.
 
 United States,
 
 148 Ct. Cl. 445 (1960) ;
 
 Brown
 
 v.
 
 United States,
 
 143 Ct. Cl. 605 (1958) ;
 
 Thompson
 
 v.
 
 United States,
 
 134 Ct. Cl. 646, 139 F. Supp. 935 (1956).
 

 [18]
 

 See,
 
 e.g., Davis
 
 v.
 
 United States,
 
 181 Ct. Cl. 1095 (1967)
 
 ; Hoppock
 
 v.
 
 United States,
 
 176 Ct. Cl. 1147 (1966) ;
 
 Hutter
 
 v.
 
 United States,
 
 170 Ct. Cl. 517, 345 F. 2d 828 (1965) ;
 
 Bowman
 
 v.
 
 United States,
 
 142 Ct. Cl. 367 (1958).
 

 [19]
 

 See,
 
 e.g., Farrar v. United States,
 
 173 Ct. Cl. 1008, 358 F. 2d 965 (1965) ;
 
 Hoen
 
 v.
 
 United States,
 
 157 Ct. Cl. 235 (1962) ;
 
 Hendrick
 
 v.
 
 United States,
 
 150 Ct. Cl. 437 (1960).
 

 [20]
 

 See,
 
 e.g., Davis
 
 v.
 
 United States,
 
 181 Ct. Cl. 1095 (1967) ;
 
 Friedman v. United States,
 
 141 Ct. Cl. 239, 158 F. Supp. 364 (1958).
 

 [21]
 

 As already indicated, this would not be such a case.
 

 [22]
 

 Physical Evaluation Boards are
 
 ad hoc
 
 bodies sitting at military installations all over the world. If the court did suspend proceedings to allow a PEB to reconvene, assuming the Board would have the authority to do so In the circumstances, the plaintiff might be faced with travel expenses and undoubtedly would face a “new” PEB; the value of having an administrative body reconsider its prior decision in light of new evidence would be lost. It is probable that most “remanded” cases would have to go to the Correction Board, a permanent body centered in Washington, which may well have had no prior connection with the matter.
 

 One of the arguments advanced by the Government is the possibility of a long interval between a plaintiff’s separation and his trial here. But the staleness of the evidence would be no less of a problem if, as the defendant suggests, we were to suspend proceedings for an administrative decision.
 

 [23]
 

 Lite the contract boards, these military tribunals have no subpoena power. In
 
 BiancM
 
 this defect was outweighed by the indications that Congress desired all evidence to be taken by the boards. Here, where there is no such legislative command, we believe the defect has greater weight.
 

 [24]
 

 In addition to the new evidence allowed before the disability appellate boards and the Correction Board, the latter itself reopens cases, not infrequently, which it has previously refused to hear and it often entertains repeated applications for relief (which it denies summarily).
 

 [25]
 

 As one example, there might well have been a different development as to The Surgeon General’s advisory opinions. The opportunity to produce rebuttal evidence in court has helped to avert the dangers of such
 
 ex parte
 
 advice. See,
 
 e.g., Hutter
 
 v.
 
 United
 
 States, 170 Ct. Cl. 517, 522-25, 345 F. 2d 828, 831-33 (1965). If we had refused to receive
 
 de novo
 
 evidence, we would, perhaps, be faced with the choice of invalidating the regulations permitting such
 
 ex parte
 
 opinions or of requiring that the Corrections Board grant an evidentiary hearing in all cases in which The Surgeon General’s advice is a major factor. Cf.
 
 Palluconi
 
 v.
 
 United States,
 
 136 Ct. Cl. 190, 197-98, 143 F. Supp. 572, 576 (1956) (dissenting opinion).